1999-NMCA-152

992 P.2d 896

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Robert LAGUNA, Defendant–Appellant.**

**No. 19443.**

Court of Appeals of New Mexico.

Oct. 4, 1999.

Certiorari Denied, No. 26,017,
Nov. 29, 1999.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Susan Gibbs, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

SUTIN, Judge.

{1} Defendant appeals his convictions of first degree kidnapping, two counts of attempted criminal sexual contact of a minor (CSCM), and enticement of a child. He argues that (1) the evidence is insufficient to support first degree kidnapping; (2) the kidnapping statute, NMSA 1978, Section 30-4-1 (1995), is unconstitutionally vague; and (3) the prohibition against double jeopardy was violated. We conclude that sufficient evidence supports the first degree kidnapping conviction and that the kidnapping statute passes constitutional muster. We also hold that double jeopardy has been violated and remand to vacate the enticement conviction and one of the attempted CSCM convictions.

## FACTS

{2} The victim, Robert H., two months away from fifteen years old, decided to walk to his girlfriend's house on a hot, Las Cruces, July afternoon. Getting there would take about an hour. A car passed by. The driver, Defendant, waved, and Robert waved back. Defendant pulled off the street and motioned for Robert to come over. Robert went to the vehicle and Defendant asked Robert if he had a sister. Robert replied that he did. Defendant asked her name, which Robert supplied. Defendant indicated that he knew her. During cross-examination, Robert testified that he did not know if it was true that Defendant knew his sister and that his sister knew a lot of people. After the small talk about Robert's sister, Defendant asked Robert if he needed a ride.

Robert accepted, got in the car and gave Defendant directions. Robert testified that he got in the vehicle because he wanted a ride, not because Defendant knew his sister. However, on redirect, Robert testified that he felt more comfortable getting in the vehicle because Defendant said he knew his sister. Nevertheless, because it was hot, he would have taken a ride from anyone that day.

{3} As Defendant was driving in the direction indicated by Robert, he placed his closed hand on Robert's leg and began to rub and move his hand up Robert's leg. Robert pushed Defendant's hand away. Again, Defendant placed his hand on Robert's leg and worked it up the leg toward his crotch. Robert testified that this touching happened more than twice. Robert continued to push Defendant's hand away. On at least one of those touchings, Defendant grabbed Robert's leg.

{4} Defendant turned on a street that was not in the direction of Robert's destination. Defendant pulled over to a house, and asked, "Can we stop at my friend's house real quick?" Robert told Defendant that if he did, he, Robert, was "just going to leave." Defendant drove on, continuing in the direction that Robert had given him. By this time, Robert was trying to think of a way to get away from Defendant and he told Defendant that he needed to stop at a Shell station they were passing. Robert then quickly changed his mind about the Shell station and directed Defendant to his sister's boyfriend's house, which was nearby. Robert was thinking, "Well, because like if I had to struggle or anything, I could tell [her boyfriend]." Defendant drove to the house and stopped in front of it.

{5} At some point or points during the ride, Robert thought that Defendant might rape him and that Defendant would not let him out of the car.

{6} At the sister's boyfriend's house, while the engine remained running and before Robert could unfasten his seatbelt and exit the vehicle, Defendant grabbed for Robert's crotch. According to Robert, Defendant "tried to grab my penis, but he grabbed the pants" instead. Robert instantly and

reactively punched Defendant, who then let go of the pants. Robert unfastened his seatbelt, got out of the car, went into the house and told the mother of his sister's boyfriend what happened. He then began to walk to his girlfriend's house. Defendant pulled up and called to Robert from the car. Robert told Defendant, "No. I'm going to kill you...." Defendant left, and Robert went into a nearby house and called the police.

## DISCUSSION

### I. *The Evidence of Kidnapping Is Sufficient*

{7} Defendant contends that this evidence is insufficient to support the conviction of first degree kidnapping. Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support a conclusion. *See State v. Carrasco,* 1997–NMSC–047, ¶ 11, 124 N.M. 64, 946 P.2d 1075. We review the evidence in the light most favorable to the verdict, resolving all conflicts and indulging in all permissible inferences to uphold the conviction and disregarding all evidence and inferences to the contrary. *See State v. Rojo,* 1999–NMSC–001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We must decide whether the evidence could justify a finding by a rational trier of fact that each essential element of the crime charged has been established beyond a reasonable doubt. *See State v. Huff,* 1998–NMCA–075, ¶ 10, 125 N.M. 254, 960 P.2d 342.

{8} Kidnapping is the "unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception, with intent ... to inflict death, physical injury or a sexual offense on the victim." Section 30–4–1(A). Kidnapping is a first degree felony that can be reduced to a second degree felony when the defendant "voluntarily frees the victim in a safe place and does not inflict great bodily harm upon the victim." Section 30–4–1(B).

{9} Defendant concedes that there was evidence that he took or transported Robert with the intent to commit a sexual offense. Defendant does not argue that the evidence was insufficient to prove unlawfulness. He contends, however, that there was no evidence of force, intimidation, or deception at any stage. He argues that the State

relied only on deception but did not meet its burden of proving deception. The record shows that the State argued both intimidation and deception in the taking and transporting of Robert. The use of force is not an issue.

{10} While there does not appear to be any evidence of intimidation in getting Robert into the car, the evidence of what occurred during the ride could reasonably lead the fact finder to conclude that Defendant intimidated Robert during transportation. Defendant argues that there was no testimony of any threats or use of intimidating words or gestures. We disagree. To intimidate is to "make timid[; t]o inhibit or discourage by or as if by threats." *Webster's II New College Dictionary* 581 (1995). Intimidation includes "putting in fear." *Black's Law Dictionary,* 737 (6th ed.1990); *see also State v. Sanchez,* 78 N.M. 284, 285, 430 P.2d 781, 782 (Ct.App.1967). Intimidation may result from words or conduct. Intimidation creates an apprehension of danger of bodily harm while also reducing the victim's ability to resist the advances toward that harm. *See Sanchez,* 78 N.M. at 285, 430 P.2d at 782.

{11} Robert was in a moving car, strapped in his seatbelt, when Defendant made demonstrative sexual advances. Defendant changed the intended destination. Robert was afraid that Defendant was going to rape him. He did not think Defendant would let him out of the car. Defendant was an adult, in control of the vehicle, making demonstrative sexual advances toward a young teenager. We believe these are circumstances from which the jury could reasonably infer that Robert was transported or confined by intimidation.

{12} Defendant also maintains that there was no evidence of deception and no nexus between any deception and Robert's acceptance of the ride. He argues that in order to prove deception, the State was required to show that, but for his statement that he knew Robert's sister, Robert would not have taken the ride with him. Defendant focuses on Robert's state of mind. Robert's state of mind is not, however, essential to prove kidnapping by deception. *See State v.*

*Garcia*, 100 N.M. 120, 125, 666 P.2d 1267, 1272 (Ct.App.1983). Furthermore, we disagree that Defendant's statement of knowing Robert's sister was the basis of the deceit. Defendant initiated the contact with a lure to make Robert comfortable and with an illicit, hidden motivation. The deceit was the offer of the ride while concealing the intent of exploring sexual involvement with Robert. *See id.* at 124, 666 P.2d at 1271 (giving a ride to a nine-year-old child on the defendant's shoulders, and the child's appearance of being happy, was enough to prove kidnapping by deceit because deception "embodies either affirmative acts intended to delude a victim or omissions that conceal the intent and purpose of an accused").

■ {13} Moreover, kidnapping can occur when an association begins voluntarily but where the defendant's real purpose is something other than the reason the victim voluntarily associated with the defendant. *See State v. Blackburn*, 251 Kan. 787, 840 P.2d 497, 501 (1992); *State v. French*, 139 Vt. 320, 428 A.2d 1087, 1088 (1981); *cf. State v. Pisio*, 119 N.M. 252, 260, 889 P.2d 860, 868 (Ct.App.1994) (construing the kidnapping statute prior to the 1995 amendments); *State v. Mares*, 112 N.M. 193, 199, 812 P.2d 1341, 1347 (Ct.App.1991) (same). The jury here could reasonably conclude that Defendant deceived Robert and that a causal connection existed between the deception and Robert's acceptance of the ride.

■ {14} Defendant contends that even if a kidnapping occurred, the charge should have been reduced to second degree kidnapping because the evidence established that he voluntarily freed Robert in a safe place.

{15} The court instructed the jury that in order to find first degree kidnapping, it would have to find that Defendant did not voluntarily free Robert in a safe place. Sufficient evidence exists to support the jury's determination that Defendant did not voluntarily free Robert. Although Defendant did drive Robert to his sister's boyfriend's house, before Robert could unlatch his seatbelt and get out of the car Defendant reached for Robert's crotch and grabbed Robert's pants. In a reactive move, Robert punched Defendant. Defendant let go. Robert got out of

the car. The jury could reasonably determine that Defendant's act of grabbing Robert's pants constituted a restraint sufficient to justify a finding that Defendant did not voluntarily free Robert from the vehicle. While Defendant argues that he did not intend to restrain Robert, but simply attempted a final sexual contact, the effect of grabbing Robert's pants was a restraint, however momentary. That restraint prevented Robert from leaving the vehicle when he wanted to and forced him to fend off the further sexual pursuit. Robert had to free himself.

{16} Because there exists sufficient evidence that Defendant did not voluntarily free Robert, we need not address whether the place of Robert's freedom was a safe one.

{17} In sum, the evidence was sufficient to establish that Defendant took Robert by deception and transported Robert by deception and intimidation with the intent to inflict a sexual offense. The evidence was also sufficient to establish that Defendant did not voluntarily free Robert. The jury could have determined beyond a reasonable doubt, as it did, that Defendant committed first degree kidnapping.

II. *The Statute is Not Unconstitutionally Vague*

■ {18} Defendant contends that the kidnapping statute is unconstitutionally vague as applied to the facts of this case. Defendant did not preserve this issue below. Although it seems clear that we will review a constitutional void-for-vagueness challenge despite the lack of preservation, *see State v. Aranda*, 94 N.M. 784, 787, 617 P.2d 173, 176 (Ct.App.1980), we address the issue in some detail because of possible confusion created by language in *State v. Duran*, 1998–NMCA–153, ¶ 32, 126 N.M. 60, 966 P.2d 768, indicating that a void-for-vagueness constitutional claim may have to be preserved below in order to be addressed on appeal.

{19} In *Aranda*, the defendant attacked a felony statute as unconstitutionally vague. This Court considered the issue despite the defendant's failure to raise it in the trial court. The Court reasoned that the criminal appeal rule then in effect, Rule 308, saved

the issue for consideration. *Aranda,* 94 N.M. at 787, 617 P.2d at 176. Relying on *Aranda,* we later considered whether a statute created an unconstitutional, prior restraint on free speech, notwithstanding the defendant's failure to preserve the issue in the trial court. *See City of Farmington v. Fawcett,* 114 N.M. 537, 539–44, 843 P.2d 839, 841–46 (Ct.App.1992). Our precedent on this preservation issue when the constitutionality of a statute is raised stems back as far as *State v. Diamond,* 27 N.M. 477, 488, 202 P. 988, 993 (1921). *See also, State v. Barreras,* 64 N.M. 300, 304–05, 328 P.2d 74, 77 (1958); *State v. Austin,* 80 N.M. 748, 749–50, 461 P.2d 230, 231–32 (Ct.App.1969).

{20} Another line of cases may, however, suggest that a void-for-vagueness constitutional claim must be preserved below in order to be addressed on appeal. *See Duran,* 1998–NMCA–153, ¶ 32, 126 N.M. 60, 966 P.2d 768 (noting that a constitutional void-for-vagueness claim must be preserved but not actually refusing review despite lack of preservation). *Duran* cites *State v. Muise,* 103 N.M. 382, 387, 707 P.2d 1192, 1197 (Ct.App. 1985), a case in which the district court's "constitutional investiture of original jurisdiction" to entertain a trial on misdemeanor charges also pending in a magistrate court was questioned. The Court in *Muise* said that "[e]ven a constitutional claim must be properly raised in order to preserve error for review upon appeal." *Id.* at 386, 707 P.2d at 1196. But this language was dictum because the Court decided the issue on the merits. *See id.*

{21} *Muise,* in turn, relied upon *State v. Bolen,* 88 N.M. 647, 648, 545 P.2d 1025, 1026 (Ct.App.1976), which, without any discussion or rationale given, held that the defendant's claims that his consecutive sentences violated the prohibitions against double jeopardy and cruel and unusual punishment would not be considered on appeal because they were not raised in the trial court. *Bolen,* in turn, relied on *State v. Brakeman,* 88 N.M. 153, 153, 538 P.2d 795, 795 (Ct.App.1975), which did not permit the defendant to attack the voluntariness of a guilty plea for the first time on appeal. None of these earlier cases, *Brakeman, Bolen,* or *Muise,* involved First or Fourteenth Amendment attacks on the constitutionality of criminal statutes.

{22} Of these two different applications of the preservation rule, we apply the *Diamond–Aranda* line of cases to the case before us. While *Duran* is a void-for-vagueness case, its precedential foundation is not built on a voidness or First Amendment attack against a criminal statute. *Aranda,* its predecessors, and *City of Farmington* are much closer and more applicable to, and better reasoned for, the case at hand.

{23} We follow this precedent to review the Defendant's void-for-vagueness attack despite lack of preservation below. We hold that to the extent that *Duran* and *Muise* indicate or hold that a void-for-vagueness constitutional claim must be preserved below in order to be reviewed on appeal, those cases are not to be followed.

{24} We review the challenge to the kidnapping statute "in light of the facts of the case and the conduct which is prohibited by the statute." *Duran,* 1998–NMCA–153, ¶ 31, 126 N.M. 60, 966 P.2d 768. Defendant will not succeed if the statute clearly applied to his conduct. *See id.* Our review is *de novo. See id.* A strong presumption of constitutionality underlies each legislative enactment, and the party challenging constitutionality has the burden of proving a statute is unconstitutional beyond all reasonable doubt. *See id.*

{25} One arm of the test of vagueness is whether the statute allows individuals of ordinary intelligence a fair opportunity to determine whether their conduct is prohibited. *See City of Chicago v. Morales,* 527 U.S. 41, 119 S.Ct. 1849, 1875, 144 L.Ed.2d 67 (1999); *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *State v. Pierce,* 110 N.M. 76, 81–82, 792 P.2d 408, 413–14 (1990).

{26} The other arm of the vagueness test is whether the statute permits police officers, prosecutors, judges, or juries to engage in arbitrary and discriminatory enforcement of the statute, which occurs because the statute has no standards or guidelines and therefore allows, if not encourages, subjective and *ad hoc* application. *See City of Chicago,* 119

S.Ct. at 1863; *Kolender*, 461 U.S. at 358, 103 S.Ct. 1855; *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

{27} Defendant contends that the kidnapping statute did not give notice that his acts constituted first degree kidnapping. Defendant limits his challenge to the language of Subsection B, which provides that "[w]hoever commits kidnapping is guilty of a first degree felony, except that he is guilty of a second degree felony when he voluntarily frees the victim in a safe place and does not inflict great bodily harm upon the victim." Defendant argues that a person of ordinary intelligence would not be able to tell whether the exception language, "voluntarily frees the victim in a safe place," states one element, or two necessary and independent elements to be proved by the State when it seeks a first degree kidnapping conviction. Defendant then raises the question whether the State also has to show as part of its burden of proof the inverse of Subsection B if a defendant has committed kidnapping as defined in Section A? That is, does the State have to prove the defendant *involuntarily* released the victim in an *unsafe* place? Defendant mixes burden of proof with vagueness. Although Defendant did not object to the court's kidnapping instruction on any ground suggesting the instruction was improper other than that the evidence did not support the instruction, we nevertheless address this argument briefly, and then turn to Defendant's vagueness argument.

{28} The court's first degree kidnapping instruction required the jury to find beyond a reasonable doubt that Robert "was not voluntarily freed in a safe place." We hold that this instruction could leave little doubt in a juror's mind that in order to convict Defendant of first degree kidnapping, the juror must determine beyond a reasonable doubt either (1) that Defendant did not voluntarily free Robert or (2) if Defendant voluntarily freed Robert, that Robert was not freed in a safe place. Defendant lost his opportunity for a conviction of second degree kidnapping once the jury found either or both of these elements.

{29} On the vagueness issue, we find no difficulty in determining that the language in Subsection B, regarding how a first degree crime is reduced to a second degree crime, can be understood by, and gives reasonable notice to, persons of ordinary intelligence exercising common sense.

{30} A person of ordinary intelligence can understand the meaning of the words "voluntarily frees the victim in a safe place" in the context of the kidnapping statute. A person of ordinary intelligence can understand that if the victim is voluntarily freed from a taking, restraint, transport, or confinement, and if the circumstances into which the victim is freed are safe for the victim, the penalty will be lessened.

{31} Applying this reading of the statute, we conclude that the statute is not vague as applied to the facts of this case. At the end of Robert's journey, Defendant completed transporting Robert when Defendant stopped at the sister's boyfriend's house as Robert requested. However, just at the point the transporting ended, Defendant acted to restrain Robert by grabbing Robert's pants right at the location of Robert's private parts, instead of simply allowing Robert to freely leave the vehicle. The restraint involved another pursuit of unwelcomed sexual touching. A person of ordinary intelligence surely would know that this sexual grabbing was inconsistent with a voluntary release and was, instead, its antithesis.

{32} Defendant also contends that the distinction between the first and second degree offenses is not specific enough to prevent arbitrary or discriminatory enforcement by police, prosecutors, and courts. "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 108–09, 92 S.Ct. 2294. Defendant simply throws this "bone" out for us to chew on. The bone has no meat and we have little to digest.

{33} Subsection B does not encourage or permit police officers, prosecutors, judges, or juries to engage in arbitrary or discriminatory enforcement or to permit standardless or

*ad hoc* determinations. We are not faced here with a *carte blanche* stop, search, or seizure statute that encompasses "a great deal of harmless behavior," permitting police officers arbitrary or standardless enforcement power. *See City of Chicago,* 119 S.Ct. at 1851. We discern little evidence that an officer, prosecutor, judge, or jury would be unable "to distinguish between innocent conduct and conduct threatening harm." *Id.* at 1859. It cannot be said that the kidnapping statute in any regard "affords too much discretion to the police and too little notice to citizens." *Id.* at 1863. Defendant does not show us how Subsection B of the kidnapping statute is unconstitutionally permissive in that regard.

In sum, Section 30–4–1(B) is not unconstitutionally vague.

### III. *Defendant was Placed in Double Jeopardy*

{34} Defendant has two double jeopardy concerns. He prevails on both.

■■■ {35} His first is based on the prohibition against multiple punishments for the same conduct. In analyzing this contention, we must first determine if Defendant's conduct was unitary so that the same acts were used to prove a violation of both statutes. *See State v. Livernois,* 1997–NMSC–019, ¶ 19, 123 N.M. 128, 934 P.2d 1057. If the conduct is not unitary, there is no double jeopardy violation. *See id.* ¶ 22. If the conduct is unitary, we must determine " 'whether the legislature intended to create separately punishable offenses.' " *Id.* ¶ 19 (quoting *Swafford v. State,* 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991)).

■■■ {36} The State concedes that the enticement-of-a-child charge was based on the same conduct that supported the kidnapping-by-deception charge. We find no clear indication that the Legislature intended to create separately punishable offenses under these circumstances. Indeed, we have held that enticement of a child is a lesser included offense of kidnapping by deception. *See Garcia,* 100 N.M. at 125, 666 P.2d at 1272. The conviction of the lesser charge cannot stand.

■■■ {37} Defendant's second double jeopardy contention concerns the two attempted CSCMs. The State charged Defendant in two separate counts with attempted CSCM, reciting the elements of the statute. One instruction covered both counts. Defendant argues that there were not two separate and distinct offenses of attempted CSCM. *See Herron v. State,* 111 N.M. 357, 361–62, 805 P.2d 624, 628–29 (1991) (setting forth a number of factors to be considered in determining the appropriate unit of prosecution). It is unclear from the record and the jury instructions what conduct constituted the two instances of attempted CSCM.

{38} The State argues that there was evidence of two separate and distinct acts of attempted CSCM even apart from the final crotch grab. According to the State, this evidence includes Robert's testimony that Defendant rubbed his leg, moving up toward his crotch several times in a continual manner. Each time Robert pushed his hand away. Under the factors set forth in *Herron,* however, we believe that this was simply one continuous attempt to reach Robert's private parts. The touchings occurred over a very short time period, and there was no intervening event aside from Robert pushing Defendant's hand away. We conclude that this repeated touching was a single ongoing attempt to reach Robert's private parts.

{39} The single instruction to find two distinct instances of attempted CSCM does not indicate what evidence was to be used to establish the crimes. We cannot know with reasonable certainty the basis for the two attempted CSCM convictions. A violation of double jeopardy may exist if both convictions stand. One of the convictions must therefore be set aside. *See State v. Rodriguez,* 113 N.M. 767, 772, 833 P.2d 244, 249 (Ct.App. 1992). The State argues that the second attempted CSCM was based upon Defendant grabbing Robert's pants in the crotch area, and that this is a separate, distinct event sufficient for a separate unit for prosecution under *Herron.* We assume without deciding that may be so. But the jury was not instructed which events were to be considered as the basis for the two attempted CSCM charges. Faced with one alternative that

would violate double jeopardy, we have no choice but to reverse.

**CONCLUSION**

{40} Sufficient evidence supports the first degree kidnapping conviction. The exception in Section 30–4–1(B) of the statute prohibiting kidnapping is not unconstitutionally vague. Finally, we hold that Defendant's right to be free from double jeopardy has been violated and that the enticement conviction and one of the attempted CSCM convictions must be vacated. Therefore, we reverse and remand to allow the district court to vacate the enticement-of-a-child conviction and to vacate one of the two attempted CSCM convictions.

{41}  **IT IS SO ORDERED.**

BOSSON and ARMIJO, JJ., concur.