This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date:  March 23, 2015**

**STATE OF NEW MEXICO,**

Plaintiff-Respondent,

v.                                                          NO. 33,548

**BENEDICTO MARQUEZ,**

Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Kenneth H. Martinez, District Judge**

Jorge A. Alvarado, Chief Public Defender
William A. O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Petitioner


Hector H. Balderas, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Respondent

**DECISION**

**DANIELS, Justice.**

{1} New Mexico caselaw establishes that a kidnapping conviction cannot be supported by restraint or movement that is merely incidental to another defined crime. Applying that principle to this case in which Defendant was convicted of both kidnapping and criminal sexual contact of a minor, and concluding that there also is insufficient evidence to support a conviction of kidnapping by deception, we reverse Defendant's kidnapping conviction because it is unsupported by substantial evidence.

{2} Having considered the briefing, record, and applicable law in this case, we conclude that there is no reasonable likelihood that a formal opinion would advance New Mexico law. Acting within this Court's discretion under Rule 12-405(B)(1) NMRA to dispose of a case by order or decision rather than formal opinion where the "issues presented have been previously decided," we enter this decision.

**I.    BACKGROUND**

{3} Defendant Benedicto Marquez was convicted of both second-degree criminal sexual contact of a minor (CSCM) and first-degree kidnapping. The case related to allegations by Defendant's then-six-year-old daughter that Defendant sexually assaulted her on the drive home from her babysitter's house during a weekend when

she was in Defendant's lawful custody.

{4}     Defendant had custody of his daughter on alternating weekends, including the weekend of July 13- 15, 2007. Because Defendant was playing in a two-day softball tournament, he arranged for his daughter to stay overnight with a babysitter.

{5}     The daughter testified at trial that after Defendant picked her up from the babysitter's house to take her home on July 14, Defendant stopped his car on the side of the road at an undetermined location where there were no other cars or buildings and "put his private on [her] butt." The daughter's mother and grandmother testified that the daughter gave them similar accounts after the incident occurred. Although the daughter was the only prosecution witness to give eyewitness testimony, the State also introduced supporting testimony from the mother's live-in boyfriend at the time of the incident, as well as from pediatric sexual abuse specialist Dr. Renee Ornelas, detective Adam Gaitan, and forensic scientist Catherine Dickey. The testimony from these witnesses supported the State's case that a sexual offense had been committed, despite defense evidence to the contrary, but gave no insight about any other facts of the interaction between Defendant and his daughter related to the sexual assault or the ride home from the babysitter's house.

{6}     The district court instructed the jury that in order to find Defendant guilty of

CSCM the State had to prove that Defendant "touched or applied force to [the daughter's] unclothed buttocks," that she was "12 years of age or younger," that the "act was unlawful," and that the incident took place in New Mexico on or between July 10 and 16, 2007. The court further instructed the jury that in order to find Defendant guilty of kidnapping the State had to prove that Defendant "took or restrained or confined or transported [the daughter] by force, intimidation or deception," that he "intended to hold [the daughter] against [her] will to inflict death, physical injury or a sexual offense on [her]," and that the alleged incident took place in New Mexico on or between July 10 and 16, 2007. No instructions provided guidance to the jury in determining whether the two charged offenses were separate. The jury convicted Defendant of both charges.

{7}     On appeal, Defendant did not challenge his CSCM conviction but argued that his kidnapping conviction (1) was unsupported by sufficient evidence and (2) violated his right against double jeopardy. In a divided opinion, a majority of the three-judge Court of Appeals panel affirmed Defendant's kidnapping conviction, holding that "the jury could have reasonably found that the crime of kidnapping was complete, though continuing, prior to Defendant's commission of CSCM." *State v. Marquez*, No. 30,565, mem. op. at 12-13, 17 (N.M. Ct. App. Mar. 7, 2012)

4

(nonprecedential). We granted certiorari to review the Court of Appeals holding. *See State v. Marquez*, 2012-NMCERT-005, 294 P.3d 446.

## II.     DISCUSSION

## A.     Standard of Review

{8}     When undertaking a sufficiency of the evidence analysis, we "determine whether substantial evidence of either a direct or a circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Dowling*, 2011-NMSC-016, ¶ 20, 150 N.M. 110, 257 P.3d 930 (internal quotation marks and citation omitted). In doing so, we "view the evidence in the light most favorable to the State, resolving all conflicts and indulging all permissible inferences in favor of the verdict." *State v. Reed*, 2005-NMSC-031, ¶ 14, 138 N.M. 365, 120 P.3d 447.

## B.     Restraining the Victim While Committing Criminal Sexual Contact Does Not Constitute a Separate Crime of Kidnapping

{9}     The New Mexico kidnapping statute provides,

> Kidnapping is the unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception, with intent:
> (1)     that the victim be held for ransom;
> (2)     that the victim be held as a hostage or shield and confined against his will;
> (3)     that the victim be held to service against the victim's will; or

          (4)     to inflict death, physical injury or a sexual offense on the victim.

NMSA 1978, § 30-4-1(A) (2003).

{10} Several months after a divided panel of the Court of Appeals filed the nonprecedential memorandum opinion affirming Defendant's kidnapping conviction in this case, that Court issued its opinion in *State v. Trujillo*, 2012-NMCA-112, 289 P.3d 238, *cert. quashed*, No. 33,837, 2015-NMCERT-003. We let *Trujillo* stand as precedent by our recent order quashing certiorari. In *Trujillo*, the Court undertook a thorough construction of Section 30-4-1, *see id.* ¶¶ 25-30, and a thorough review of the caselaw in New Mexico and in other federal and state jurisdictions, noting that New Mexico precedent is consistent with the majority view in other jurisdictions and concluding that "the Legislature did not intend to punish as kidnapping restraints that are merely incidental to another crime," *see id.* ¶ 39. Accordingly, the Court reversed a kidnapping conviction based solely on movements and restraints of a victim that were incidental to the contemporaneous commission of an aggravated battery, concluding that "the restraint [of the victim] was not longer or greater than that necessary to achieve a battery—in fact, the restraint occurred within the period of the battery, in the same general location, and there was no indication that Defendant intended any other purpose than to continue battering Victim." *Id.* ¶¶ 1, 39.

{11} Although *Trujillo* did not involve restraints or confinements incidental to a sexual assault, it relied on New Mexico caselaw that did. *See, e.g., id.*, ¶ 15 (quoting *State v. Crain*, 1997-NMCA-101, ¶ 21, 124 N.M. 84, 946 P.2d 1095, for the proposition that "'kidnapping cannot be charged out of every [criminal sexual penetration charge] without some force, restraint, or deception occurring *either* before or after the sexual penetration'"). Subsequently, the Court of Appeals has applied *Trujillo* to review kidnapping convictions factually related to the commission of sexual offenses. *See, e.g., State v. Dominguez*, 2014-NMCA-064, ¶ 12, 327 P.3d 1092; *State v. Tapia*, 2015-NMCA-___, ¶ 36, ___ P.3d ___ (No. 32,277, Feb. 17, 2015).

{12} In *Dominguez*, the Court of Appeals upheld a conviction where the evidence established that a separate kidnapping had occurred before the sexual assault of the victim, including evidence that the defendant accosted the victim with a pistol and moved her from room to room in her home with the gun held to her head before sexually assaulting her. *See* 2014-NMCA-064, ¶¶ 3, 12. The *Dominguez* Court distinguished *Trujillo* and concluded that the kidnapping had been completed when the defendant held the victim at gunpoint in her living room before taking her around the house and finally to the bedroom to begin the separate sexual assault and that the

restraints and movements supporting the kidnapping conviction were therefore not merely incidental to the commission of the sexual assault. *See id.*

{13}     The facts in *Tapia* are more analogous to those in this case. In *Tapia*, the defendant was convicted of numerous counts of criminal sexual penetration and criminal sexual contact of his eight-year-old daughter and his four-year-old stepdaughter, and he also was convicted of multiple counts of kidnapping in connection with the assaults. The kidnapping charges were based on the defendant's (1) lying on top of and restraining his victim during the course of the sexual assaults, (2) making his victim take off her clothes before he committed the sexual assaults, and (3) making his victim go to a bedroom where he committed the sexual assaults. *See* 2015-NMCA-___, ¶¶ 30-33. "[E]mploying the *Trujillo* analysis, [the Court] determine[d] that the nature of Defendant's incidental restraint [of his victims] did not increase his culpability beyond that already inherent to any sexual assault." *Id.*, ¶ 31. Lying on top of a victim and holding her while committing the sexual assault was not a restraint that "was any longer or greater than that necessary to commit sexual assault." *Id*. The evidence "d[id] not establish that the restraint imposed increased [the victim's] risk of harm or the severity of the assault beyond that inherent to the underlying crime." *Id.* Making a victim take off her clothes and get on the bed for the

8

sexual assault to take place was "not the type of separate conduct that the Legislature intended to punish as kidnapping" in addition to the punishable sexual assault crimes." *Id.*, ¶ 32.

{14} As in *Tapia,* the conduct of Defendant in this case, while reprehensible and punishable as a felony sexual assault, did not also constitute an additional offense of kidnapping. At trial, the State relied on the daughter's accounts that Defendant restrained or confined her when he put her on his lap and held her while he placed his penis against her buttocks. This restraint or confinement is the type of force contemplated by the crime of CSCM. *See* Section 30-9-13(A). The evidence offered by the State does not show that Defendant restrained or confined the daughter at any point prior to or following the sexual assault; instead, it establishes only that the restraint or confinement relied on by the State was simply incidental to the sexual assault itself.

{15} Because the evidence of unlawful restraint here is indistinguishable from the evidence of force Defendant applied while committing CSCM, there is no independent evidentiary basis to support Defendant's separate kidnapping conviction for the restraint that took place when Defendant stopped the car by the side of the road to perpetrate the sexual assault.

9

## C. There Was Insufficient Evidence of Kidnapping by Deception

{16} During the appellate process, the State shifted its kidnapping theory to a different theory than the one relied on at trial involving transport and restraint in the car at the time of the sexual assault. Instead, relying on *State v. Sanchez*, 2000-NMSC-021, 129 N.M. 284, 006 P.3d 486, and *State v. Laguna*, 1999-NMCA-152, 128 N.M. 345, 992 P.2d 896, the State proposed a kidnapping-by-deception theory accepted by two of the three Court of Appeals judges. *See Marquez*, No. 30,565, mem. op. at 11, 17. Essentially, the State now argues that Defendant kidnapped his daughter when he picked her up from the babysitter, that he intended to sexually assault his daughter at that point, and that, although she voluntarily got into the car at Defendant's direction without physical coercion, she was deceived into doing so because she was tricked into thinking she was going home with Defendant instead of taking a ride to a sexual assault. Based on the facts that Defendant (1) picked his daughter up from the babysitter's house, (2) stopped at a location other than his home, and (3) sexually assaulted her, the State contends that there was sufficient evidence for the jury to determine that Defendant kidnapped his daughter by deception. The Court of Appeals majority agreed. *See id.*

{17} This Court has recognized that kidnapping by deception "can occur when an

10

association [between a victim and a defendant] begins voluntarily but the defendant's actual purpose is other than the reason the victim voluntarily associated with the defendant." *State v. Jacobs*, 2000-NMSC-026, ¶ 24, 129 N.M. 448, 10 P.3d 127; *accord Sanchez*, 2000-NMSC-021, ¶ 32; *see also Laguna*, 1999-NMCA-152, ¶¶ 2, 13 (describing kidnapping by deception where the teenage victim consciously decided to associate with the offender under false pretenses). When the victim of kidnapping by deception is also the victim of a sexual assault, "the key to finding the restraint element in kidnapping, separate from that involved in [the sexual assault], is to determine the point at which the physical association between the defendant and the victim was no longer voluntary." *Jacobs*, 2000-NMSC-026, ¶ 24 (citing *State v. Pisio*, 1994-NMCA-152, [¶ 30,] 119 N.M. 252, 889 P.2d 860). As used in Section 30-4-1(A), the word deception "embodies either affirmative acts intended to delude a victim or omissions that conceal the intent and purpose of an accused." *State v. Garcia*, 1983-NMCA-069, ¶ 15, 100 N.M. 120, 666 P.2d 1267 (citing the 1973 New Mexico kidnapping statute, which defines kidnapping as "the unlawful taking, restraining or confining of a person, by force or deception" for specified unlawful purposes). In other words, in order to prove kidnapping by deception "the State was required to" introduce evidence showing by "'affirmative acts . . . or omissions'" that

11

the defendant engaged in deceptive conduct at the time the alleged kidnapping occurred. *See Laguna*, 1999-NMCA-152, ¶ 12 (quoting *Garcia*, 1983-NMCA-069, ¶ 15).

{18} In *Jacobs*, a kidnapping by deception occurred when the defendant offered a group of three teenagers a ride home, but after dropping off the first two as promised he took the eighteen-year-old female victim to a remote location where he sexually assaulted and murdered her. *See* 2000-NMSC-026, ¶¶ 4-6, 25. Focusing on the defendant's conduct, the *Jacobs* Court concluded that the jury could have found that the victim's association with the defendant was no longer voluntary when the defendant (1) lied by offering the victim a ride home with another intent in mind, (2) changed his intended destination from the victim's house to the remote location, or (3) walked the victim from his car to the arroyo where he murdered her. *See id.* ¶ 25.

{19} Similarly, the New Mexico Court of Appeals held that a kidnapping by deception occurred when an adult male defendant lied to a fourteen-year-old male victim by telling the victim he knew the victim's sister when he did not, offered to give the victim a ride to the victim's girlfriend's house, and instead sexually assaulted the victim. *Laguna*, 1999-NMCA-152, ¶¶ 2-3, 17. Looking at the defendant's affirmative conduct, the Court of Appeals concluded in *Laguna* that the jury could

12

have found the victim's association with the defendant was not voluntary because the defendant deceived the victim at the point when he lured the victim into the car by lying about knowing the victim's sister and offering to give the victim a ride while concealing his intent to sexually assault the victim. *See id.* ¶ 17.

{20} Earlier, the New Mexico Court of Appeals in *Garcia* held that a kidnapping by deception occurred when an eighteen-year-old male defendant offered to give a ride on his shoulders to an unrelated three-year-old female victim and then took her to a nearby arroyo where he raped her. *See* 1983-NMCA-069, ¶¶ 2-3, 16, 18. The Court of Appeals focused on the defendant's affirmative and deceptive conduct, making himself appear friendly to the victim by placing and carrying her on his shoulders in order to delude her about his intentions before taking her to a secluded area and raping her, and held that "[t]he record contains adequate evidence of kidnapping by deception." *See id.* ¶¶ 14-16.

{21} Unlike any prior case involving a theory of kidnapping by deception that has come before the New Mexico appellate courts, this case does not involve a voluntary association between two adult strangers, as in *Jacobs*, or between two unrelated persons with a purported common acquaintance, as in *Laguna*, or even between a child and an unrelated adult stranger, as in *Garcia*. Rather, this case involves a parent

13

with lawful custody of his own child. And of greatest importance is that no evidence in the record supports the State's speculative theory that Defendant deceived his daughter at the time he routinely picked her up from the babysitter, as he was scheduled to do, or that he made any deceptive representations to his daughter before he headed toward home.

{22} By contrast, in *Jacobs*, *Laguna*, and *Garcia*, there was proof that the victims initially associated with the defendants willingly because the defendants lied to or deceived the victims in order to coerce their voluntary association. *See Jacobs*, 2000-NMSC-026, ¶¶ 4-5 (coercing a voluntary association by promising a ride home); *Laguna*, 1999-NMCA-152, ¶ 2 (coercing a voluntary association by pretending to know the victim's sister); *Garcia*, 1983-NMCA-069, ¶¶ 2, 14 (coercing a voluntary association by playfully befriending the young child-victim; defining the term deceit as "any trick, collusion, contrivance, false representation, or underhanded practice, used to defraud another," and further defining "'deception'" as "to take unawares, ensnare, mislead, delude or practice deceit"). In short, evidence that shows deceptive conduct by the defendant's affirmative acts or omissions is necessary in order to support a conviction for kidnapping by deception.

{23} The State relies on *State v. Fry*, 2006-NMSC-001, ¶ 30, 138 N.M. 700, 126

14

P.3d 516; *State v. Allen*, 2000-NMSC-002, ¶ 75, 128 N.M. 482, 994 P.2d 728; and *State v. McGuire*, 1990-NMSC-067, ¶ 10, 110 N.M. 304, 795 P.2d 996, to argue that a jury could determine that a kidnapping by deception occurred when Defendant "unlawfully confined [his daughter] in his car at [the babysitter's] house with the intent to commit a sexual offense." The State's reliance on these cases is misplaced. While *Fry*, *Allen*, and *McGuire* support the proposition that a jury may infer the *intent* element of kidnapping from the fact that a sexual assault or a murder subsequently took place, the cases do not support the proposition that the jury may infer the *deception* element. *See Fry*, 2006-NMSC-001, ¶ 30 ("[A] rational jury could reasonably conclude from the evidence that Defendant lured the victim into his car by deception *with the intent* to inflict a sexual offense on the victim." (emphasis added)); *Allen*, 2000-NMSC-002, ¶ 75 ("[A] finding that Defendant committed the murder *with the intent* to kill can be inferred from the same evidence of *intent* upon which the jury relied to find Defendant guilty of first degree murder." (emphasis added)); *McGuire*, 1990-NMSC-067, ¶ 10 ("Defendant cites no cases that hold the jury cannot infer, from evidence of acts committed at some later point during the commission of a kidnapping, that the necessary *criminal intent* existed at the time the victim first was restrained. Viewed in this manner, the evidence provides substantial

support for an inference that defendant *intended* to commit criminal sexual penetration from the moment of the abduction." (emphasis added)). In this case, there is no evidence of either deceptive conduct or deceptive intent at the time Defendant left the babysitter's house for what would have been an uneventful routine trip home if he had not later stopped and committed the sexual assault. And even though the State has argued that the jury could have concluded that Defendant took some detour rather than stopping along the regular route, our search of the record finds no evidence to support such a speculation.

{24}     The argument that this record could support a conviction and sentence for the serious felony of kidnapping by deception is not only inconsistent with New Mexico law, it has significant troubling implications. We agree with the observation of the dissenting opinion in the Court of Appeals in this case that, under such a kidnapping-by-deception theory, if Defendant had committed the sexual assault after arriving home instead of stopping along the way home, he also would have been guilty of kidnapping by deception by picking up his daughter without telling her he was going to commit a sexual assault on her after arriving home. *Marquez*, No. 30,565, mem. op. at 22 (Vigil, J., dissenting). And his crime of kidnapping would have been committed under such a theory as soon as he and his daughter drove away in the car

16

from the babysitter's house, whether or not he ever actually committed the sexual assault. The result of such reasoning from the kind of evidence in the record before us, as the *Marquez* dissent noted, would be that "every time a parent has committed [a sexual assault] on his . . . child, the parent will have also separately committed kidnapping by deception," no matter where the parent had committed the sexual assault offense. *Id.* at 23. We decline to create such an extraordinary anomaly in our law.

## III.   CONCLUSION

{25}    There was insufficient evidence in the record to support any theory that would justify a separate conviction of kidnapping, whether by force, restraint, or deception. Accordingly, we reverse Defendant's kidnapping conviction and remand to the district court for entry of an amended judgment and sentence in accordance with this decision.

{26}    **IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Justice**

17

**WE CONCUR:**

_____
**BARBARA J. VIGIL, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**