2006-NMCA-149

149 P.3d 113

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Janice L. FLEMING, Defendant–
Appellant.**

**No. 25,853.**

Court of Appeals of New Mexico.

Oct. 30, 2006.

Certiorari Denied, No. 30,107, Dec. 8, 2006.

Patricia A. Madrid, Attorney General, James W. Grayson, Assistant Attorney General, Santa Fe, NM, for Appellee.

Robert E. Tangora, L.L.C., Robert E. Tangora, Santa Fe, NM, for Appellant.

## OPINION

WECHSLER, Judge.

{1} Defendant Janice Fleming was convicted of four counts of failure to disclose material facts or a change of circumstances to obtain public assistance in violation of NMSA 1978, § 30–40–1 (1987) (amended 2006). There was evidence at trial that Defendant failed to disclose to the City of Alamogordo Housing Authority business income Defendant received during the five years she lived in public housing, as required by the Housing Authority. We hold, in the context of Defendant's convictions, that Section 30–40–1 is not unconstitutionally vague and that the term "public assistance" as used within Section 30–40–1 includes Defendant's public housing benefits. We affirm the convictions.

{2} Section 30–40–1 provides:

A. Failing to disclose facts or change of circumstances to obtain public assistance consists of any person knowingly failing to disclose any material facts known to be necessary to determine eligibility for public assistance or knowingly failing to disclose a change in circumstances for the purpose of obtaining or continuing to receive public assistance to which he is not entitled or in amounts greater than that to which he is entitled.

B. Whoever commits failing to disclose facts or change of circumstances to obtain public assistance when the value of the assistance wrongfully received is one hundred dollars ($100) or less in any twelve consecutive months is guilty of a petty misdemeanor.

C. Whoever commits failing to disclose facts or change of circumstances to obtain public assistance when the value of the assistance wrongfully received is more

than one hundred dollars ($100) but not more than two hundred fifty dollars ($250) in any twelve consecutive months is guilty of a misdemeanor.

D. Whoever commits failing to disclose facts or change of circumstances to obtain public assistance when the value of the assistance wrongfully received is more than two hundred fifty dollars ($250) but not more than two thousand five hundred dollars ($2,500) in any twelve consecutive months is guilty of a fourth degree felony.

E. Whoever commits failing to disclose facts or change of circumstances to obtain public assistance when the value of the assistance wrongfully received is more than two thousand five hundred dollars ($2;500) but not more than twenty thousand dollars ($20,000) is guilty of a third degree felony.

F. Whoever commits failing to disclose facts or change of circumstances to obtain public assistance when the value of the assistance wrongfully received exceeds twenty thousand dollars ($20,000) is guilty of a second degree felony.

 {3} A criminal statute violates the due process requirements of the Fifth and Fourteenth Amendments to the United States Constitution and Article II, Section 18 of the New Mexico Constitution if it does not fairly warn of its proscriptions. *See State v. Segotta,* 100 N.M. 498, 499–500, 672 P.2d 1129, 1130–31 (1983). A statute may not forbid actions "in terms so vague that men of common intelligence must guess at its meaning and [must] differ as to its application." *Id.* at 499, 672 P.2d at 1130. In analyzing a statute, we presume the statute to be constitutional and we will afford a statute a constitutional construction if it is reasonably supported by the statutory language. *Id.* at 500, 672 P.2d at 1131. We conduct our analysis as a mixed question of law and fact, affording deference to findings of fact made in the district court and determining the law applicable to such facts under de novo review. *State v. Duran,* 1998–NMCA–153, ¶ 31, 126 N.M. 60, 966 P.2d 768; *see also State v.*

*Attaway,* 117 N.M. 141, 144–45, 870 P.2d 103, 106–07 (1994) (describing the standard of review for mixed questions of fact and law), *modified on other grounds, State v. Lopez,* 2005–NMSC–018, ¶¶ 17–20, 138 N.M. 9, 116 P.3d 80.

 {4} Defendant asserts that Section 30–40–1 is unconstitutionally void for vagueness because of its penalty provisions. According to Defendant, the statute is faulty because it allows multiple acts of failing to disclose to be separate crimes in Subsection A, while Subsections B through F total the amounts wrongfully received to reach the penalty. Indeed, there is prosecutorial discretion built into the statute. Subsections B, C, and D determine the penalty for failing to disclose by adding the amount of public assistance received "in any twelve consecutive months." Section 30–40–1(B), (C), (D). However, Subsection E does not have a time limitation and arguably allows a prosecutor the discretion to aggregate the amount of assistance wrongfully received over an indeterminate time in order to exceed $2500 and charge a third degree felony.[1] Section 30–40–1(E).

 {5} But the mere room in a statute for the exercise of charging discretion on the part of a prosecutor does not render the statute void for vagueness. *See State v. Brooks,* 117 N.M. 751, 755, 877 P.2d 557, 561 (1994); *State v. Altgilbers,* 109 N.M. 453, 466–67, 786 P.2d 680, 693–94 (Ct.App.1989). As long as a statute provides notice of the conduct that it makes criminal, a prosecutor may have the discretion to decide the manner in which to charge the criminal acts. *Altgilbers,* 109 N.M. at 467, 786 P.2d at 694. Thus, in *Brooks,* our Supreme Court determined that in charging acts of embezzlement, the state has the discretion to charge "separate counts alone" or to "aggregate the takings" and charge the higher-degree felony, or to charge in some other combination of the acts. *Brooks,* 117 N.M. at 755, 877 P.2d at 561; *see also Altgilbers,* 109 N.M. at 466, 786 P.2d at 693 ("[W]e see no reason why the choice for the prosecution must be between either one

---

1. We note that Subsection E was amended in 2006 to include a one-year limitation on aggregation of wrongfully received assistance. We must nonetheless consider the constitutionality of the version of Subsection E under which Defendant was convicted.

count in toto or one count for each act."). We do not perceive a problem with the notice given by Section 30–40–1 in this case. Although the State had some discretion in charging a third degree felony under Subsection E, the statute clearly states the criminal conduct proscribed, and Defendant does not argue otherwise.

{6} Instead, Defendant relies on *State v. Ferris*, 80 N.M. 663, 459 P.2d 462 (Ct.App. 1969), to contend that there is a constitutional deficiency in Section 30–40–1. *Ferris* involved the statute then prohibiting issuing worthless checks that provided punishments tied to either the amount of a single check or the total amount of checks issued. *Ferris*, 80 N.M. at 665, 459 P.2d at 464 (quoting statute establishing punishment "[w]hen the amount of the check ..., or the total amount of the checks ..., are for more than ... but less than ...."). This Court held that the totaling provisions of the statute were unconstitutionally vague because they were uncertain as to whether multiple acts were separate offenses or could be combined for prosecution. *Id.* at 665–66, 459 P.2d at 464–65 ("If the issuance of one check within this range is punishable, is the offender to be punished for each check issued within this range? Or, under the statutory language, may an offender issue any number of worthless checks and receive only one punishment so long as the amount is less than [the maximum amount of the range]?").

{7} However, as we have discussed, prosecutorial discretion in establishing a charging pattern does not, without a notice deficiency, create a constitutional vagueness issue. Moreover, Section 30–40–1, as used in this case, does not have the fault at issue in *Ferris*. For the counts that resulted in Defendant's convictions, the State charged Defendant separately for each twelve consecutive month period, even if the count was brought under Subsection E. It included in Count 1, alleging a violation under Subsection E, the value of wrongfully obtained assistance in the twelve-month period beginning January 16, 1998. Counts 2 (Subsection E), 3 (Subsection E), and 4 (Subsection D) covered the twelve month periods beginning January 16, 1999, January 16, 2000, and January 16, 2001, respectively. The jury returned guilty verdicts on the four counts, but guilty of a third degree felony under Subsection E only on Count 2.

■ {8} In addressing a constitutional challenge for vagueness, we review the challenged statute "in light of the facts of the case and the conduct which is prohibited by the statute." *Duran*, 1998–NMCA–153, ¶ 31, 126 N.M. 60, 966 P.2d 768. The evidence in this case was that Defendant annually completed income forms as part of the Housing Authority's annual recertification process. This evidence presented a reasonable manner in which to separate the counts in accordance with Section 30–40–1. *See Altgilbers*, 109 N.M. at 466, 786 P.2d at 693 (recognizing the state's interest in charging in accordance with "the community's interest in proper enforcement of the laws and the interest (shared by the community and the defendant) in fairness to the defendant"). Not only was there no notice deficiency, but the prosecutor did not abuse the discretion allowed by the statute.

■ {9} Defendant further argues that the legislature did not intend to criminalize her conduct because Section 30–40–1 relates to eligibility for public assistance, not public housing. As an issue of statutory interpretation, we address Defendant's argument concerning legislative intent under de novo review. *State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995).

{10} Although Section 30–40–1 proscribes failing to disclose facts relating to eligibility for public assistance, it does not provide, or refer to, a definition of "public assistance." We therefore seek to understand the legislative intent in its use of the term. We begin by looking to the plain and ordinary meaning of the term, *State v. Ogden*, 118 N.M. 234, 242, 880 P.2d 845, 853 (1994), and apply that meaning "absent clear and express legislative intention to the contrary." *Rowell*, 121 N.M. at 114, 908 P.2d at 1382 (internal quotation marks and citation omitted).

{11} Defendant notes the dictionary definition of "[a]id, such as money or food, given to homeless and other financially needy people, the aged, or the inhabitants of a disaster-stricken area; relief." American Heritage

Dictionary 1416 (4th ed.2000). Defendant contends, however, that this definition "is restricted to specific categories of persons." But Defendant does not express the reason that she is not included within the category.

{12} Public housing refers to a housing program created by the Municipal Housing Law, NMSA 1978, §§ 3–45–1 to –25 (1965, as amended through 1989). In creating the program, the legislature declared a need to address housing for persons of low income. Section 3–45–2; *see, e.g.,* § 3–45–2(C) (recognizing the "shortage of safe or sanitary dwelling accommodations available at rents which persons of low income can afford"). Specifically, the Municipal Housing Law restricts participation as a tenant in a housing program to persons with an annual net income not exceeding "federally established standards." Section 3–45–10(A)(3). The Municipal Housing Law authorizes municipalities to establish housing authorities to administer the municipality's housing program such as the Alamogordo Housing Authority. Section 3–45–5(A). As described in the testimony at trial, the Alamogordo Housing Authority calculates a tenant's rent based on the tenant's income.

{13} On the basis of this statutory scheme and process, public housing comes within the plain and ordinary meaning of "public assistance." It is "aid, such as money or food" because it is financial assistance toward housing, a living essential. *See State v. Martinez,* 1999–NMSC–018, ¶ 27, 127 N.M. 207, 979 P.2d 718 (noting that a list beginning with "such as" was "intended to be illustrative rather than exhaustive"). It is designed to assist financially needy persons with their housing and includes the assistance received by Defendant.

{14} In an argument that the plain and ordinary meaning of "public assistance" does not apply to Section 30–40–1, Defendant states that Section 30–40–1 must be read in connection with other statutes in pari materia in order to ascertain legislative intent. She points to the definition within the Public Assistance Act, which is interspersed throughout NMSA 1978, §§ 27–2–1 to –34 (1973, as amended through 2006).

 {15} As used in the Public Assistance Act:

E. "public welfare" or "public assistance" means any aid or relief granted to or on behalf of an eligible person under the Public Assistance Act ... and regulations issued pursuant to that act[.]

Section 27–2–2(E). However, as stated in Section 27–2–2, this definition is specifically limited to the Public Assistance Act. Section 30–40–1 is not part of the Public Assistance Act, and, although enacted after the Public Assistance Act, it makes no reference to the Public Assistance Act or its definitions. *See Sunwest Bank of Albuquerque, N.M. v. Nelson,* 1998–NMSC–012, ¶¶ 14–15, 125 N.M. 170, 958 P.2d 740 (noting that statutory definitions applying explicitly to other acts "are not controlling" but finding them persuasive in the absence of plain statutory language). Moreover, we read statutes on the same subject matter together as a tool of legislative construction to determine the intent of an unclear statute. *Ogden,* 118 N.M. at 243, 880 P.2d at 854. We agree with Defendant that Section 30–40–1 and the Public Assistance Act relate to the same subject matter with regard to public assistance. But, as we have discussed, the Municipal Housing Law, although it does not expressly mention the term "public assistance," also relates to the subject matter of "public assistance" as that term is commonly used. When we consider the common usage of the term and also that the definition in the Public Assistance Act is limited to that Act, we see no lack of clarity in the use of "public assistance" in Section 30–40–1 to also refer to the housing programs of the Municipal Housing Law or any legislative intent clearly to the contrary.

**CONCLUSION**

{16} Because Section 30–40–1 is not unconstitutionally vague as applied to Defendant, and because public housing is encompassed by the phrase "public assistance" as used in Section 30–40–1, Defendant's convictions are affirmed.

{17} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO, and RODERICK T. KENNEDY, Judges.