**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-073**

**Filing Date: June 17, 2009**

**Docket No. 28,215**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**MEAGAN RENE GAMLEN,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Mark A. Macaron, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Lisa A. Torraco
Albuquerque, NM

for Appellant

**OPINION**

**WECHSLER, Judge.**

**{1}** Defendant Meagan Gamlen appeals the district court's judgment on record affirming the metropolitan court order finding Defendant guilty of driving while intoxicated and failure to maintain her lane. We consider (1) whether Defendant's right to counsel of her choice under the Sixth Amendment to the United States Constitution was violated as a result of a police officer's inappropriate behavior during an interview with Defendant's original chosen counsel and (2) whether the ordinance requiring a driver to maintain her lane is unconstitutionally vague. We affirm.

1

## BACKGROUND

**{2}**     In March 2006, Officer Jude Lujan of the Albuquerque Police Department observed a truck drift over the "fog line" for approximately sixty to seventy yards and initiated a traffic stop. Upon making contact with Defendant, Officer Lujan noticed that Defendant had bloodshot, watery eyes, slurred speech, and a strong odor of alcohol. Defendant admitted to having consumed three beers that evening. Officer Lujan had Defendant perform field sobriety tests and, as a result of numerous indications of intoxication from the tests, arrested Defendant for drunk driving. Officer Lujan charged Defendant with violation of Albuquerque, N.M., Traffic Code Section 8-2-1-42 (1974), for failure to maintain a traffic lane; NMSA 1978, Section 66-8-102 (2008), for driving while intoxicated; and NMSA 1978, Section 66-8-138 (2001), for possession of an open alcoholic beverage while in a motor vehicle.

**{3}**     Defendant hired Thomas J. Mescall II as her attorney. Mescall interviewed Officer Lujan in September 2006. Before the interview began, Officer Lujan called Mescall a "son of a bitch," and during the interview, Officer Lujan used his middle finger to refer to the report while he was answering questions, a gesture that Mescall considered obscene. Officer Lujan was also noticeably irritated during the interview, stated numerous times that he did not want to repeat answers, and left the interview early to appear in court. About a week after the interview, Lisa Torraco substituted for Mescall as Defendant's counsel. Torraco and Mescall testified that Mescall had determined that it was in Defendant's best interest that Torraco replace Mescall as counsel. Mescall informed Defendant that she could oppose his withdrawal, but Defendant chose not to do so.

**{4}**     Defendant filed a motion to suppress Officer Lujan's testimony, arguing that Officer Lujan's actions "forced" her attorney of choice to withdraw from the case. During the hearing on the motion to suppress, Mescall testified that he withdrew upon his and Defendant's request to the court. Mescall further testified that he did not know how Defendant's trial might have been impacted if Mescall had continued as Defendant's counsel and later stated that Officer Lujan might perjure himself or color his testimony.

**{5}**     The metropolitan court ultimately denied Defendant's motion to suppress and found that, although Officer Lujan's behavior could be viewed as offensive or rude, Defendant failed to provide evidence that required dismissal or suppression. Instead, the metropolitan court stated that Defendant made a voluntary choice that was unnecessary and unwarranted. Defendant's case proceeded to trial. The metropolitan court found Defendant guilty of driving while intoxicated and failure to maintain a traffic lane. Defendant filed a motion to reconsider, arguing that the ordinance prohibiting failure to maintain a traffic lane was unconstitutionally vague. The metropolitan court entered a judgment and sentence, again finding Defendant guilty of driving while intoxicated and failure to maintain a traffic lane. Defendant appealed to the district court. The district court affirmed in a memorandum opinion, and Defendant appealed to this Court.

2

**SIXTH AMENDMENT:  DEPRIVATION OF COUNSEL OF CHOICE**

**{6}**    The Sixth Amendment to the United States Constitution states:  "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  "[A]n element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006).

**{7}**    Defendant argues that her Sixth Amendment right was violated because her chosen counsel, Mescall, withdrew from the case due to Officer Lujan's conduct.  Specifically, she argues that the metropolitan court erred by not dismissing the case "with prejudice because a [s]tate agent's misconduct permanently deprived [Defendant] of her chosen counsel." Defendant relies on *United States v. Amlani*, 111 F.3d 705, 710-11 (9th Cir. 1997), which held that allegations of prosecutorial disparagement of counsel in a defendant's presence establish a Sixth Amendment claim.

**{8}**    In *Amlani*, the state's attorney disparaged the defendant's counsel in front of the defendant, causing the defendant to lose confidence in his original chosen counsel's competency and, therefore, to substitute counsel.  *Id.* at 710.  *Amlani* held that "a change in defense counsel caused by the prosecution's misconduct itself establishes the requisite prejudice to vacate [the defendant's] conviction" and that "the allegations state a Sixth Amendment claim."  *Id.* at 711-12.  Defendant in the present case therefore contends that, "like the misconduct in *Amlani*[,] the error took on constitutional magnitude because of its result."

**{9}**    We assume without deciding that we would apply reasoning similar to *Amlani* and that Officer Lujan is a "state agent" for purposes of this opinion.  *See, e.g.*, *People v. Hooper*, 403 N.W.2d 605, 608 (Mich. Ct. App. 1987) (recognizing that acts of an FBI agent or secret service agent are "attributable to the prosecution").  With these assumptions, if Defendant can establish a violation of her right to counsel of choice, she would be entitled to a reversal of her conviction without a showing that her new counsel failed to provide her a quality defense because, unlike a Sixth Amendment challenge for ineffective assistance of counsel, a violation of the right to counsel of choice in itself constitutes prejudice.  *See Gonzalez-Lopez*, 548 U.S. at 147-48.

**{10}**    To succeed in her arguments, however, Defendant must establish a sufficient causal link between Officer Lujan's actions and Defendant's decision to terminate Mescall's services.  Defendant contends in this regard that "[a]n error causes a deprivation of counsel whenever that error is the primary reason for the chosen attorney's withdrawal."  We do not agree.  Although the decision to withdraw as counsel is a private one made between an attorney and client, a court cannot be bound by the subjective decisions of an attorney and client in its scrutiny of a constitutional claim based upon the right to counsel of one's choice. Regardless of the "primary reason" for the private decision for an attorney's withdrawal, the court must nevertheless determine whether the alleged interference   constitutes a

3

constitutional infringement justifying a judicial remedy. This analysis is a factual one that depends on the facts of each case.

**{11}** We thus look to the facts in this case to determine whether Defendant has established a Sixth Amendment violation. Our review of the metropolitan court's application of the Sixth Amendment to the facts is a mixed question of law and fact that we review de novo. *See Duncan v. Kerby*, 115 N.M. 344, 347-48, 851 P.2d 466, 469-70 (1993).

**{12}** Mescall testified that Officer Lujan appeared "combative," called Mescall a "son of a bitch," did not respond to all of Mescall's questions, and used his middle finger to point to documents. Mescall further testified that he believed, on the basis of information received through other officers who approached him about Officer Lujan after the interview, that Officer Lujan was "making sure Mescall could not do his job representing [Defendant]." However, Mescall also testified that Officer Lujan neither threatened to commit perjury nor threatened repercussions at all if Mescall did not withdraw as Defendant's counsel and that he did not believe that the other officers indicated that Officer Lujan would commit perjury. Mescall testified that the prosecutor did not force him to withdraw, that, instead, he did so voluntarily, and that he did not know how Defendant's case would be negatively impacted if he continued to represent Defendant.

**{13}** This evidence does not establish that Defendant suffered a Sixth Amendment violation. Although Officer Lujan expressed negative behavior toward Mescall, the evidence does not demonstrate that his behavior had, or would have, a demonstrable impact on Mescall's ability to represent Defendant or upon the outcome of the case. Mescall's belief that Officer Lujan intended to frustrate Mescall's defense efforts in an improper manner was largely speculative, and Officer Lujan's disrespectful acts alone do not establish such an intent. Mescall's testimony about the other officers' statements was vague.

**{14}** Unfortunately, in our adversary system of criminal justice, both sides do not always act in the professional manner expected of them. The metropolitan court agreed that Officer Lujan fell short of that standard. To some degree, our court rules are intended to control this type of behavior. Discovery rules contemplate involving the court to resolve discovery disputes and arm the court with the ability to compel cooperation and issue sanctions. *See* Rule 7-504(H) NMRA. Indeed, upon the proper request and proof, the metropolitan court could have sanctioned Officer Lujan's behavior. Nonetheless, our holding is limited to Defendant's Sixth Amendment argument. While we do not condone Officer Lujan's behavior and stress that the pursuit of justice is best carried out with professional behavior on the part of all participants in the process, the evidence is insufficient to establish a Sixth Amendment violation.

**{15}** We note that Defendant additionally relies on *Gonzalez-Lopez* to argue that the elements of a Sixth Amendment violation are (1) an error (2) that results in the deprivation of a defendant's chosen counsel. However, *Gonzalez-Lopez* does not affect our analysis. In *Gonzalez-Lopez*, the trial court erroneously denied the defendant's application for

admission *pro hac vice*, and, as a result, the defendant was required to retain local counsel. 548 U.S. at 142-43, 148. The United States Supreme Court held that the trial court violated the defendant's Sixth Amendment right to counsel of choice. *Id.* at 148. The issue before the Court in *Gonzalez-Lopez* was whether a trial court's denial constituted a Sixth Amendment violation and whether that error was subject to a harmless error analysis. *See id.* The Court did not contemplate the actions of the prosecution or any other state actor. "It is well established that cases are not authority for propositions not considered." *See State v. Erickson K.*, 2002-NMCA-058, ¶ 20, 132 N.M. 258, 46 P.3d 1258 (internal quotation marks and citation omitted).

**{16}** Therefore, to find a violation of her Sixth Amendment right to counsel of choice under *Gonzalez-Lopez*, Defendant must establish that a lower court erroneously denied her counsel of choice and that the erroneous denial outweighed the need for judicial fairness. *See* 548 U.S. at 148, 152. Defendant makes no claim that the metropolitan court itself denied Defendant her counsel of choice. Indeed, the metropolitan court accepted Mescall's withdrawal, and Defendant made no objection. Moreover, as we have discussed, the evidence in this case does not show that there was any erroneous denial of counsel of choice. As such, we decline to find a Sixth Amendment violation under *Gonzalez-Lopez*.

## CONSTITUTIONALITY OF ORDINANCE TO MAINTAIN LANE

**{17}** We next address Defendant's argument that Section 8-2-1-42, requiring a driver to travel in marked lanes, is unconstitutionally vague. Whether the ordinance is constitutional is a question of law that we review de novo, using the same rules of construction we apply to statutes. *See Prot. & Advocacy Sys. v. City of Albuquerque*, 2008-NMCA-149, ¶ 43, 145 N.M. 156, 195 P.3d 1, *cert. denied*, 2008-NMCERT-009, 145 N.M. 257, 196 P.3d 488. An ordinance is void for vagueness if people "of common intelligence must guess at its meaning and [must] differ as to its application." *State v. Fleming*, 2006-NMCA-149, ¶ 3, 140 N.M. 797, 149 P.3d 113 (alteration in original) (internal quotation marks and citation omitted). We assume an ordinance is constitutional if it is reasonably supported by a plain reading of the language in the ordinance. *See id.*

**{18}** Section 8-2-1-42 states, "[n]o operator of a vehicle shall fail to keep such vehicle within the boundaries of a marked traffic lane, except when lawfully passing another, making a lawful turning movement or lawfully changing lanes." Defendant contends that people "of common intelligence would not all be satisfied by" a plain reading of the ordinance because such a reading, in isolation, would "prohibit the operation of a vehicle down any unlaned roadway, in any parking area[,] or in the driver's own garage." We do not agree.

**{19}** A plain reading of the ordinance alerts a person of common intelligence that, when operating a vehicle within a marked traffic lane, the vehicle must stay within the boundaries except under specified circumstances. *See* § 8-2-1-42. Defendant's examples of the "absurd result[s]" that would occur from a plain reading of the ordinance are not appropriate

5

applications of the ordinance. Unlaned roadways, parking areas, and garages are not "marked traffic lane[s]." *See id.* Not all driving surfaces and roadways are bound by marked traffic lanes. This Court will not speculate regarding which sections of the traffic code apply to unmarked roadways. Drivers using roadways with marked traffic lanes are required to comply with the ordinance. Because the ordinance's plain language does not require people "of common intelligence [to] guess at its meaning," it is not unconstitutionally vague. *See Fleming*, 2006-NMCA-149, ¶ 3 (internal quotation marks and citation omitted).

{20} Defendant further argues that the spirit of the law creates confusion. Specifically, Defendant contends that "[t]he requirement of 'lawfulness' could logically be construed to refer to the other sections of the Traffic Regulations Article of the Traffic Code[, which] are concerned with protecting drivers[,] not the sanctity of the roadway markings." Moreover, Defendant argues that Albuquerque, N.M., Traffic Code Section 8-2-1-51 (1974), which directs drivers to "yield right-of-way and immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway" when approached by an authorized emergency vehicle, creates discrepancy with Section 8-2-1-42 because, "upon seeing Officer Lujan's marked patrol car behind her, [Defendant] could not have known that [Section] 8-2-1-42 prohibited her from pulling closer to the right-hand edge of the roadway unless a siren sounded." We are not persuaded.

{21} The terms "lawfully" and "lawful" in Section 8-2-1-42 refer to the particular actions of passing, turning, or changing lanes, and a person of common intelligence can reasonably ascertain which passing, turning, or changing lane maneuvers are lawful. Further, Defendant presents no evidence to establish that she was attempting to pull over because she believed Officer Lujan required the lane. Indeed, Defendant did not pull over, but instead "straddled the line" for sixty to seventy yards and did not swerve. Only after Officer Lujan initiated his emergency equipment did Defendant actually pull over. A person of common intelligence would understand that Section 8-2-1-42 prohibited straddling the fog line. The metropolitan court did not err in admitting evidence gathered following the traffic stop.

**CONCLUSION**

{22} We affirm the district court's affirmance of the metropolitan court order finding Defendant guilty of driving while intoxicated and failure to maintain her lane.

{23} **IT IS SO ORDERED.**

                            _____
                            **JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for *State v. Gamlen*, No. 28,215**

| | |
|---|---|
| **CT** | **CONSTITUTIONAL LAW** |
| CT-RC | Right to Counsel |
| CT-VO | Vague or Overbroad |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-DG | Driving While Intoxicated |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-MR | Motion to Suppress |