This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.                                       **NO. 29,514**

**AARON A. RAMOS,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Karen L. Parsons, District Judge**

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

     Defendant appeals his misdemeanor conviction under the Family Violence

Protection Act, NMSA 1978, Section 40-13-6(D), (F) (2008), for violating a temporary order of protection that prohibited contact with his ex-girlfriend, Andrea Reed. Defendant contends that the district court's refusal of his requested jury instruction, which included the element that he "knowingly" violated the order of protection, was reversible error. He also argues that if Section 40-13-6(D), (F) does not include "knowingly" as an element, then it is void for vagueness, that the evidence is insufficient to support his conviction; and that imposing a criminal penalty for violation of an *ex parte* order of protection violates due process. We affirm.

**BACKGROUND**

The district court issued a temporary order of protection against Defendant on October 31, 2008, upon a petition by Andrea Reed. The order prohibited Defendant from going within one-hundred yards of Ms. Reed's home, school, or workplace. The order further prohibited Defendant from going within twenty-five yards of Ms. Reed in a public place.

On Thursday, November 6, 2008, Defendant went to the Win, Place and Show (WPS) bar in Ruidoso, where Defendant testified he and Ms. Reed had danced "countless" times on Thursday nights. Defendant testified that he was not looking for Ms. Reed or anyone else. Defendant was in the bar having a beer when he saw Ms.

2

Reed walk behind him and approach the bouncer. Defendant was concerned that Ms. Reed would try to cause a scene, so he tried to "shield" himself from any kind of "engagement" with Ms. Reed.

Ms. Reed testified that Defendant and she made eye contact. After Ms. Reed realized that Defendant was not going to leave, Ms. Reed explained to the bouncer that she had an order of protection against Defendant and requested the bouncer's assistance in asking Defendant to leave. The bouncer approached Defendant and explained that Ms. Reed was present and wanted him to leave. Defendant testified that he said to the bouncer, "Why do I have to leave? Why can't she leave?" Defendant told the bouncer that he did not think he should be required to leave since he was just there and was "not messing with anybody." The bouncer then informed Defendant that Ms. Reed was talking about calling the police. Defendant admitted that he told the bouncer, "Fuck her, she can call the cops. . . . I'm finishing my beer." Defendant testified that he finished his beer and then left.

Ms. Reed testified that Defendant did not leave until he realized that she had called the police. After realizing that she was speaking to the police, Defendant announced, "Okay, I'll leave," and then he left. The bouncer testified that Defendant was about twelve to fifteen feet away from Ms. Reed while he was sitting at the bar.

The bouncer estimated that ten to fifteen minutes elapsed from the time Defendant arrived to the time he left. He further testified that Defendant left after Ms. Reed walked past Defendant dialing the number to the police department.

Defendant testified that he knew of the order of protection and had been served with the order by a deputy sheriff. The sheriff also explained to Defendant that he was serving him with an order of protection, that he could not call or contact Ms. Reed, and that he was required to stay away from her. However, Defendant was at work and too busy to read the order at the time it was served. Defendant testified that he did not read the order until after the incident occurred. He further testified that he was not aware of the twenty-five-yard restriction at the time of the incident. He said he did not read the order earlier because "it wasn't important to [him] because [he] wanted her out of [his] life, and it was a good thing." He knew that he was required to stay away from Ms. Reed, stating, "It's obvious; it's a protective order." He testified that, in his opinion, "stay away" meant that he was not to take any initiative to contact her, to call her, to write her, or to engage her. Defendant testified that he thought he complied with the order at the time of the incident because he had no intent to contact Ms. Reed and did not approach Ms. Reed at WPS. While Defendant was in jail, he read the order of protection. He testified that the order "specifically says that the

4

twenty-five-yard stipulation is applicable in public places." He further agreed that WPS was a public place.

At trial, Defendant tendered two proposed jury instructions on the elements of violating an order of protection. The first instruction defined criminal intent in conformity with UJI 14-141 NMRA, which required the State to prove beyond a reasonable doubt that Defendant acted intentionally when he committed the crime. Defendant's second proposed instruction included as an element of the offense both that he "knew about the order of protection" and that he "knowingly violated the order of protection." The district court refused Defendant's proposed instruction requiring that the violation of the order of protection have been "knowing." The court did instruct the jury, however, that the State was required to prove beyond a reasonable doubt that Defendant "knew about the temporary order of protection" and that he "acted intentionally when he committed the crime." The jury found Defendant guilty of violating the order of protection, and Defendant now appeals.

**DISCUSSION**

**A.    Jury Instructions**

Defendant argues that the district court's refusal of his requested jury instruction, which included the element that he "knowingly violated the order of

5

protection," was reversible error. "The propriety of jury instructions given or denied is a mixed question of law and fact[,]" which we review de novo. *State v. Lucero,* 2010-NMSC-011, ¶ 11, 147 N.M. 747, 228 P.3d 1167 (internal quotation marks and citation omitted).

"A jury instruction is proper, and nothing more is required, if it fairly and accurately presents the law." *State v. Laney*, 2003-NMCA-144, ¶ 38, 134 N.M. 648, 81 P.3d 591. "When a uniform jury instruction exists, that instruction must be used without substantive modification." *State v. Caldwell*, 2008-NMCA-049, ¶ 24, 143 N.M. 792, 182 P.3d 775. In the absence of a uniform jury instruction, this Court must examine whether the jury instruction conforms to the language of the governing statute. *See State v. Doe*, 100 N.M. 481, 483, 672 P.2d 654, 656 (1983) ("[I]f the jury instructions substantially follow the language of the statute or use equivalent language, then they are sufficient."). Whether a crime requires a showing of intent is a question of statutory construction. *State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). We begin our review by looking at the words selected by the Legislature and the plain meaning of the language. *See State v. Smile,* 2009-NMCA-064, ¶ 8, 146 N.M. 525, 212 P.3d 413, *cert. quashed,* 2010-NMCERT-006, 148 N.M. 584, 241 P.3d 182. When a statute contains language that is clear and unambiguous,

6

we give effect to it and refrain from further statutory interpretation. *Id.*

Section 40-13-6(D), (F) provides the following in pertinent part:

> D. A peace officer shall arrest without a warrant and take into custody a restrained party whom the peace officer has probable cause to believe has violated an order of protection that is issued pursuant to the Family Violence Protection Act . . . .

> . . . .

> F. A restrained party convicted of violating an order of protection granted by a court under the Family Violence Protection Act is guilty of a misdemeanor . . . .

There is no uniform jury instruction for violation of an order of protection. Defendant requested an instruction requiring the State to prove that an order of protection was issued; that it was in effect on November 6, 2008; that Defendant knew about the order; and that Defendant "knowingly violated" the order. The district court reasoned that absent an applicable uniform jury instruction, the elements instruction should conform to the applicable statute. Defendant conceded that the statute did not explicitly require that the conduct be "knowing," but argued that without including "knowingly" as an element, a person could be unfairly convicted for innocent conduct such as passing the person going the other way on a public street or accidently running into the person at a store. The district court determined that the statute does not require proof of a "knowing" violation and therefore refused Defendant's proposed

7

instruction.

Defendant then presented the district court with an alternative instruction, suggesting that if the court would not allow his requested instruction requiring a knowing violation, then the court should give an instruction stating that Defendant "violated the order" along with the instruction on general criminal intent. The court ultimately instructed the jury on the following elements of the offense:

1. A temporary order of protection was filed in the [d]istrict [c]ourt . . .;

2. The temporary order of protection was valid on November 6, 2008;

3. Defendant knew about the temporary order of protection;

4. [D]efendant violated the temporary order of protection;

5. This happened in New Mexico on or about the 6th day of November 2008.

In addition, the court instructed the jury that the State was required to prove beyond a reasonable doubt that Defendant acted intentionally when he committed the crime pursuant to UJI 14-141.

We are not persuaded that Section 40-13-6(D), (F) requires that a person knowingly violate an order of protection. The statute does not contain any language stating that the defendant must "knowingly" violate the order. *See* § 40-13-6(D) (providing that "[a] peace officer shall arrest . . . a restrained party whom the peace

8

officer has probable cause to believe has violated an order of protection"); *see also* § 40-13-6(F) (providing that a person "convicted of violating an order of protection . . . is guilty of a misdemeanor"). Furthermore, "[w]e will not read into a statute language which is not there, especially when it makes sense as it is written." *State v. Hubble*, 2009-NMSC-014, ¶ 10, 146 N.M. 70, 206 P.3d 579. The Legislature knows how to include the word "knowingly." *See, e.g.*, NMSA 1978, § 30-3A-3(A) (2009) (stating that "[s]talking consists of knowingly pursuing a pattern of conduct"); *see also State v. Wilson,* 2010-NMCA-018, ¶ 12, 147 N.M. 706, 228 P.3d 490 (holding that use of the term "knowingly" in NMSA 1978, Section 30-31-20(B), (C) (2006), required specific knowledge that the drug trafficking would occur within a drug-free school zone), *cert. denied*, 2010-NMCERT-001, 147 N.M. 673, 227 P.3d 1055. We therefore conclude that the Legislature intended to omit the word "knowingly" in Section 40-13-6(D), (F), and we will not read such an element into the statute. *See State v. Katrina G.,* 2007-NMCA-048, ¶ 17, 141 N.M. 501, 157 P.3d 66 (reasoning that when the Legislature knew how to include something, and did not, we assume the choice was deliberate); *see also Smile,* 2009-NMCA-064, ¶ 8 (stating that when the Legislature's language is clear and unambiguous we will refrain from further interpretation). As a result, we conclude that Section 40-13-6(D), (F) does not require

9

that a violation of a protection order have been "knowing." Instead, the district court properly instructed the jury regarding general criminal intent, absent a specific mens rea requirement in Section 40-13-6(D), (F). *See State v. Gonzalez*, 2005-NMCA-031, ¶¶ 12-13, 137 N.M. 107, 107 P.3d 547 (reasoning that where criminal statute lacks a mens rea requirement, it is construed as requiring general criminal intent absent legislative intent to the contrary).

Furthermore, given Defendant's testimony, he would not be entitled to his requested instruction. Defendant's defense was that he did not know his conduct was wrong based on his own deliberate ignorance and failure to read what the order of protection actually required, combined with his speculative assumptions about what the order prohibited. Defendant admitted that he had not read the order of protection prior to the incident even though it was in his possession and contained a twenty-five-yard restriction for public places. He only decided to actually read the order when he was in jail. Defendant also testified that he was entitled to speculate that he had complied with the order despite his knowledge that it was a protective order and he had not read it.

Ignorance of the law is no defense, and a person who is purposely ignorant may not claim he or she had no knowledge. *See State v. Rivera*, 2009-NMCA-132, ¶ 37,

10

147 N.M. 406, 223 P.3d 951 (stating that ignorance of the law is no defense); *see also Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97, 100, 811 P.2d 1308, 1311 (1991) (stating that "[o]ne who intentionally remains ignorant is chargeable in law with knowledge" (internal quotation marks and citation omitted)); *accord State v. Sanders*, 96 N.M. 138, 140, 628 P.2d 1134, 1136 (Ct. App. 1981). Consequently, Defendant was not entitled to remain deliberately ignorant of the order's contents and then substitute his own opinion of what was required in order to argue that he did not "knowingly" violate the order of protection.

The weakness of Defendant's position is highlighted by Defendant's admission that after reading the order, he realized that the twenty-five-yard restriction was clearly stated in the order and that WPS was clearly a public place. Under the present facts, Defendant's proposed instruction regarding an inapplicable defense would have constituted a misstatement of law and injected a false issue. *See State v. Nieto,* 2000-NMSC-031, ¶ 17, 129 N.M. 688, 12 P.3d 442 (stating that a requested instruction that presented an inapplicable defense was properly denied because it was a misstatement of law). Given that Defendant's theory of his lack of a knowing violation was based on his own failure to read the order, the district court properly refused to permit Defendant to parlay his self-imposed ignorance into a defense.

Defendant further contends that if we do not recognize that Section 40-13-6(D), (F) contains knowledge as an element, innocent violations will result in unwarranted criminal punishment. Specifically, Defendant asserts that, without knowledge as an element, a person subject to an order of protection could be unfairly convicted for passing someone in a car going the other way on a busy public street, or for accidentally running into someone at a store. These abstract situations are distinguishable from the facts in this case, where Defendant intentionally chose to remain ignorant of the order's requirements and refused to leave WPS even after he was informed that Ms. Reed wanted him to leave pursuant to the order of protection. A defendant is not entitled to an instruction that is not supported by the evidence. *See State v. Nozie*, 2007-NMCA-131, ¶ 6, 142 N.M. 626, 168 P.3d 756 (reasoning that a defendant is only entitled to jury instructions that are supported by sufficient evidence). As a result, we decline to consider whether an instruction that a defendant did not violate an order could conceivably be warranted in some other factual scenario.

Finally, Defendant argues that not requiring that a violation of a protection order be knowing invites absurd results, such as requiring Defendant to immediately exit WPS upon becoming aware of Ms. Reed's presence, leaving his beer unfinished.

12

However, Defendant fails to persuade us that leaving a beer unfinished in order to comply with an order of protection is an absurd result, and we decline to address his argument further.

As a result, we affirm the district court's denial of Defendant's requested instruction requiring that Defendant must have knowingly violated the order of protection.

**B.     Void for Vagueness**

Defendant argues that if Section 40-13-6(D), (F) does not include "knowingly" as an element, then it is unconstitutionally void for vagueness. Specifically, Defendant contends that absent a requirement that a violation be committed "knowingly," the statute does not give fair notice of what constitutes a violation. We consider this argument although it was not raised below. *See State v. Laguna*, 1999-NMCA-152, ¶ 23, 128 N.M. 345, 992 P.2d 896 (reviewing a defendant's argument that a statute was void for vagueness despite the lack of preservation). "We review a vagueness challenge de novo in light of the facts of the case and the conduct which is prohibited by the statute." *Smile*, 2009-NMCA-064, ¶ 17 (internal quotation marks and citation omitted).

A statute is void for vagueness if it fails to give persons of ordinary intelligence

a fair opportunity to determine whether their conduct is prohibited, or if it fails to provide minimum guidelines for the reasonable judge, jury, prosecutor, or police officer to enforce the statute without subjective and ad hoc application. *State v. Jacquez*, 2009-NMCA-124, ¶ 6, 147 N.M. 313, 222 P.3d 685. Statutes are presumed to be constitutional, and Defendant bears the burden of establishing that the statute is unconstitutional. *Smile*, 2009-NMCA-064, ¶ 17. Furthermore, if the statute clearly applies to Defendant's conduct, then there is no constitutional problem. *See Laguna*, 1999-NMCA-152, ¶ 24.

Defendant has failed to demonstrate that Section 40-13-6(D), (F) is unconstitutionally vague on either ground. First, Defendant fails to demonstrate that the statute did not give him a fair opportunity to determine whether his conduct was prohibited. *See Jacquez*, 2009-NMCA-124, ¶ 6. According to Defendant's own testimony, the only reason that he was not aware of the twenty-five-yard restriction was that he did not read the order of protection. After reading the order while he was in jail, however, Defendant testified that the twenty-five-yard restriction was clearly stated in the order and that WPS was a public place. Defendant further testified that even before reading the order, it was "obvious" that a protective order required him to stay away from Ms. Reed. As a result, by Defendant's own admission, the statute

gave him a fair opportunity to determine that his conduct was prohibited.

Second, the statute is not so lacking in standards that its enforcement would be subjective and ad hoc. *See Jacquez*, 2009-NMCA-124, ¶ 6. The fact that a statute is written in general terms and that it then must be applied on a case-by-case basis does not establish that it is unconstitutionally vague. *See State v. Fleming*, 2006-NMCA-149, ¶ 5, 140 N.M. 797, 149 P.3d 113 (stating that mere room in a statute for the exercise of charging discretion does not establish that a statute is void for vagueness); *State v. Larson*, 94 N.M. 795, 796, 617 P.2d 1310, 1311 (1980) (stating that a statute is not unconstitutionally vague just because some marginal cases could be hypothesized in which doubts might arise). Furthermore, Defendant's conduct in refusing to leave WPS after he was informed that Ms. Reed wanted him to leave pursuant to the order of protection constituted a clear violation of the statute. As a result, we conclude that Defendant has failed to demonstrate that Section 40-13-6(D), (F) is unconstitutionally vague. *See Laguna,* 1999-NMCA-152, ¶ 24 (reasoning that if a statute clearly applies to a person's conduct, then it is not unconstitutionally vague).

**C.     Sufficiency of the Evidence**

Defendant argues that the evidence is insufficient to support his conviction

15

because the violation was not intentional. Specifically, he contends that he left WPS "soon after" he became aware that Ms. Reed was present and that he did not attempt to approach Ms. Reed or contact her in any way.

In reviewing the sufficiency of the evidence, we analyze "whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction." *State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86. "We determine whether a rational factfinder could have found that each element of the crime was established beyond a reasonable doubt." *Id.* Furthermore, "we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

Defendant does not dispute that a temporary order of protection was filed; that the order was valid on November 6, 2008; that he knew about the order of protection and initially refused to leave WPS even after being informed that Ms. Reed wanted him to leave pursuant to the order; that he violated the order by going within twenty-five yards of Ms. Reed in a public place; and that the alleged incident happened in New Mexico on or about November 6, 2008. As a result, there was sufficient

evidence for the jury to find that Defendant intentionally violated the protection order.

To the extent that Defendant argues that his testimony supported his belief that he was in compliance with the order, the jury was free to reject his version of the incident. *See State v. Trujillo*, 2002-NMSC-005, ¶ 31, 131 N.M. 709, 42 P.3d 814 (reasoning that a factfinder may reject the defendant's version of an incident); *see also State v. Neal*, 2008-NMCA-008, ¶ 19, 143 N.M. 341, 176 P.3d 330 ("The test is not whether substantial evidence would support an acquittal, but whether substantial evidence supports the verdict actually rendered."). We hold that sufficient evidence supported the jury's finding that Defendant intentionally violated the order of protection.

**D.     Due Process**

Defendant argues that punishing him criminally based on an *ex parte* order of protection violates due process. Defendant does not state how he preserved this issue below, or why this issue need not be preserved, and therefore we decline to address it. *See State v. Dombos*, 2008-NMCA-035, ¶ 21, 143 N.M. 668, 180 P.3d 675 (declining to address the defendant's due process arguments on appeal where the defendant did not preserve them); *see also State v. Torres*, 2005-NMCA-070, ¶ 34, 137 N.M. 607, 113 P.3d 877 (stating that this Court will not address issues

17

unsupported by argument and authority).  As a result, we conclude that Defendant failed to preserve his due process claim.

**CONCLUSION**

For the foregoing reasons, we affirm Defendant's conviction and sentence.

**IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**CYNTHIA A. FRY, Judge**

18