# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: June 27, 2013

Docket No. 33,217

STATE OF NEW MEXICO,

      Plaintiff-Respondent,

v.

AARON A. RAMOS,

      Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Karen L. Parsons, District Judge**

Bennett J. Baur, Acting Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Yvonne Marie Chicoine, Assistant Attorney General
Santa Fe, NM

for Respondent

## OPINION

**BOSSON, Justice.**

{1}    A jury convicted Aaron Ramos (Defendant) of the misdemeanor of violating an order of protection. Defendant appeals because he was refused a jury instruction that would have required the jury to find that he had "knowingly" violated the protection order. Our Court of Appeals upheld the district court's decision not to give the "knowingly" instruction, noting the absence of any such word in the relevant statute and applying general principles of statutory construction. For the reasons that follow, we read the language and structure of

1

the statute together with its legislative policy and purpose, and conclude that our Legislature could only have intended to make the crime a "knowing" violation. Accordingly, it was reversible error to deny Defendant's requested instruction to that effect. We reverse and remand for a new trial consistent with this Opinion.

**BACKGROUND**

**{2}** Andrea Reed, Defendant's former girlfriend, obtained an ex parte temporary order of protection (the order) against Defendant on October 31, 2008. Her authority for the order was NMSA 1978, Section 40-13-4(A)(1) (2008) ("Upon the filing of a petition for order of protection, the court shall . . . immediately grant an ex parte temporary order of protection . . . if there is probable cause from the specific facts shown by the affidavit or by the petition to give the judge reason to believe that an act of domestic abuse has occurred[.]"). Ms. Reed's reason for obtaining the order is not entirely clear from the record, but it appears to involve Defendant having entered Ms. Reed's home without her consent. Ms. Reed was apparently upset about this, and she and Defendant had a heated conversation in which Defendant allegedly stated, "What? You act like I'm gonna burn your house down." Based on these events, Ms. Reed obtained the order.

**{3}** The order explicitly prohibited Defendant from going within 25 yards of Ms. Reed in a public place. The order also contained a provision prohibiting Ms. Reed from doing "any affirmative act the purpose or effect of which is to cause respondent to violate this order." Regarding its enforcement, the order stated that "[i]f the respondent violates any part of this order, the respondent may be charged with a crime, arrested, held in contempt of court, fined or jailed."

**{4}** A sheriff's deputy personally served Defendant with the order at his workplace. At this time, the deputy told Defendant to "just stay away from her." Defendant testified that to him this meant, "don't call her, don't write her, don't go to talk to her, or engage her." In fact, Defendant was so confident of his understanding of what the order entailed that he failed to read its contents. Additionally, Defendant testified that he told the deputy when he received the order that this "[was] great, this is the best thing that could have happened." When asked what he believed a protective order meant, Defendant replied that it meant to stay away from Ms. Reed. When asked why he did not read the order, Defendant stated that its meaning was "obvious, it's a protective order."

**{5}** Both Defendant and Ms. Reed are dance instructors and they would often go to a certain bar on Thursday nights to teach students how to dance in public with a live band. On Thursday, November 6, 2008, Defendant went to this bar intending to meet one of his students. Defendant arrived before his student and sat down at the bar and ordered a beer. As it turns out, Ms. Reed was also at this bar with her dance students, seated twelve to fifteen yards away from Defendant. Defendant testified that he did not see Ms. Reed when he arrived at the bar.

2

**{6}** After seeing Defendant, Ms. Reed approached the bouncer and told him about her protective order against Defendant and asked for his assistance. The bouncer alerted Defendant that Ms. Reed was in the bar and that she wanted him to leave. Defendant refused, stating, "that's her problem, I am going to drink my beer." According to Defendant, he also told the bouncer, "why can't she leave, why do I need to leave?" and further, "why am I having to leave, I'm not even messing with anybody at all, I'm just here."

**{7}** The bouncer informed Ms. Reed what Defendant had said. When the bouncer returned, he told Defendant that Ms. Reed was going to call the police. Defendant responded, "F--- her, she can call the cops, I'm finishing my beer." Nevertheless, when Defendant saw Ms. Reed on the telephone, he grabbed his jacket, announced, "I'm outta here," and left for another bar across the street. All told, Defendant was at the bar for an estimated ten to fifteen minutes.

**{8}** Defendant was arrested shortly thereafter at the bar across the street for violation of the protective order pursuant to NMSA 1978, Section 40-13-6(D) (2008) (describing how a peace officer shall act once presented with probable cause to believe a restrained party has violated a protective order). The District Attorney charged Defendant with one count of violation of a temporary restraining order.

**{9}** Defendant's trial occurred on March 25, 2009. There is no uniform jury instruction for a violation of a protective order. As such, Defendant proposed a jury instruction requiring the jury to find that he *knowingly* violated the order of protection, which the court denied.

**{10}** The jury found Defendant guilty, and he was sentenced to 364 days of incarceration based partially upon the court's perception of his attitude, lack of remorse, and as the judge stated, that "[he] doesn't get that what he does is wrong." Defendant served 90 of those days in the Lincoln County Detention Center with credit for time-served during his pre-sentence confinement and the remaining 270 days on probation.

**{11}** The Court of Appeals affirmed Defendant's conviction in a memorandum opinion. *State v. Ramos*, No. 29,514, slip op. at 18 (N.M. Ct. App. Aug. 16, 2011). We granted certiorari to consider the proper mens rea requirement for the crime of violating a protective order. *State v. Ramos*, 2011-NMCERT-010, 289 P.3d 1254. Defendant preserved his objection by tendering a correct jury instruction at trial, and thus we review this appeal for reversible error. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 ("The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error.").

**DISCUSSION**

**{12}** The Family Violence Protection Act, NMSA 1978, Sections 40-13-1 to -12 (1987)

(as amended through 2010) contains the procedures for obtaining and enforcing protection orders. *See* §§ 40-13-3 through - 6 (2008). Once a party has violated an order of protection, Section 40-13-6(D) states that "[a] peace officer shall arrest without a warrant and take into custody a restrained party whom the peace officer has probable cause to believe has violated an order of protection that is issued pursuant to the Family Violence Protection Act . . . . " Section 40-13-6(F) states:

> A restrained party convicted of violating an order of protection granted by a court under the Family Violence Protection Act is guilty of a misdemeanor and shall be sentenced in accordance with Section 31-19-1 NMSA 1978. Upon a second or subsequent conviction, an offender shall be sentenced to a jail term of not less than seventy-two consecutive hours that shall not be suspended, deferred or taken under advisement.

The penalty for a misdemeanor is a jail term of less than one year, or payment of a fine of not more than $1000, or both. NMSA 1978, § 31-19-1(A) (1984).

**{13}** The statute does not specify any particular mental state or mens rea that a restrained party must demonstrate to be found guilty of this misdemeanor. *See* § 40-13-6 (D) & (F). The court gave the jury the following instruction regarding the elements of the offense:

> For you to find the Defendant guilty of violating a temporary order of protection as charged in Count 1, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> > 1. A temporary order of protection was filed in the District Court of Lincoln County, N.M. for Cause Number DV 08-87;
> >
> > 2. The temporary order of protection was valid on November 6, 2008;
> >
> > 3. The Defendant knew about the temporary order of protection;
> >
> > 4. The defendant violated the temporary order of protection;
> >
> > 5. This happened in New Mexico on or about the 6th day of November 2008.

**{14}** Defendant objected to this instruction, requesting that the jury be instructed that he must have "*knowingly* violated the order of protection" in order for the jury to find him guilty. (Emphasis added.) The district judge denied this request, reasoning that "knowingly" was not specified in Section 40-13-6. Instead of including the "knowingly" element in the instruction, the district judge granted Defendant's alternative request to give the jury the general criminal intent instruction consistent with UJI 14-141 NMRA. The

4

general criminal intent instruction provided:

> In addition to the other elements of Violation of Restraining Order, the state must prove to your satisfaction beyond a reasonable doubt that the defendant acted intentionally when he committed the crime. A person acts intentionally when he purposely does an act which the law declares to be a crime, *even though he may not know that his act is unlawful.* Whether the defendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, and his conduct and any statements made by him.

(Emphasis added).

**{15}**     The Court of Appeals agreed with the district court, holding that Section 40-13-6(D) and (F) does not require a person to knowingly violate a restraining order. *Ramos*, No. 29,514, slip op. at 8. The Court focused on the language of the statute, reasoning that the Legislature knows how to include the word "knowingly" in a statute and that its omission from Section 40-13-6(D) and (F) was intentional. *Id.* at 9. The Court of Appeals held that the general intent instruction sufficed, "absent a specific mens rea requirement in Section 40-13-6(D), (F)." *Id.* at 10. For the reasons that follow, this is an accurate application of the law generally, but not, we believe, in the specific context of Section 40-13-6.

**{16}**     The State argues that no intent instruction—neither general nor specific—was necessary, and we should treat violating an order of protection as a strict liability crime. We disagree. It is well settled that, "[w]hen a criminal statute is silent about whether a *mens rea* element is required, we do not assume that the [L]egislature intended to enact a no-fault or strict liability crime." *Santillanes v. State*, 115 N.M. 215, 218, 849 P.2d 358, 361 (1993). Rather, "we presume criminal intent as an essential element of the crime unless it is clear from the statute that the [L]egislature intended to omit the *mens rea* element." *Id.*; *see also State v. Gonzalez*, 2005-NMCA-031, ¶ 12, 137 N.M. 107, 107 P.3d 547 ("Since at least 1917, we have followed the common law that where an act is prohibited and punishable as a crime, it is construed as also requiring the existence of a criminal intent."). The State also urges us to consider the law regarding contempt of court proceedings. Because Defendant was not held in contempt of court, we decline to do so.

**{17}**     *Gonzalez* is an instructive case. In that case, our Court of Appeals held that bringing contraband into a jail was not a strict liability crime, and the jury needed to be instructed that the accused had knowingly possessed contraband when he entered the jail. *Gonzalez*, 2005-NMCA-031, ¶¶ 1, 18. Like the Family Violence Protection Act, the criminal statute in *Gonzalez* was silent as to mental state. *See id.* ¶ 12; NMSA 1978, § 30-22-14(B) (1976). Like the case before us, the jury in *Gonzalez* was only given the general intent instruction. *Gonzalez*, 2005-NMCA-031, ¶ 7. Unlike the case before us, the accused did not request a "knowing" instruction. *Id.* ¶ 19.

5

**{18}** The State argued that this was a strict liability crime, but the Court of Appeals disagreed, concluding that this offense "lack[ed] the essential characteristics of a strict liability defense. It is not in the nature of a regulatory measure prescribing conduct which seriously threatens public health or safety." *Id.* ¶ 14. In determining whether the crime encompassed a mental state, the Court of Appeals considered what mental state was required for crimes of a similar nature. *Id.* ¶ 15. The Court of Appeals held that the general intent instruction was insufficient and the failure to give a "knowing" instruction amounted to fundamental error. *Id.* ¶ 26.

**{19}** We recognize that the Family Violence Protection Act is a civil statute without any separate formulation as a criminal statute and no expression of mens rea. *See generally* New Mexico Judicial Education Center, Inst. of Pub. Law, *New Mexico Domestic Violence Benchbook*, pp. 2-1 to 2-9 (University of New Mexico School of Law 2005) [hereinafter *Benchbook*]. But the Family Violence Protection Act is also a kind of hybrid, being both civil and criminal in consequence. The Legislature created the provisions regarding orders of protection in the Family Violence Protection Act to protect specific persons from domestic abuse and to deter future conduct of the other party. *See generally* §§ 40-13-1 through -7. Typically, violations of court orders are handled with contempt-of-court proceedings, which presumably could have been done here but was not. Yet, in its own terms, a violation of an order of protection can result in either civil or criminal penalties, and the party is specifically put on notice of that possibility.[1] *See* § 40-13-6 (D) & (F); § 40-13-5 (B) ("The order of protection shall contain a notice that violation of any provision of the order constitutes contempt of court and may result in a fine or imprisonment or both.").

**{20}** When punished criminally, violating an order of protection does not fit comfortably within the norms of the ordinary criminal statute. A person can be convicted for doing a prohibited act, "even if the conduct that violates the order of protection would not otherwise be against the law." *Benchbook*, *supra*, at p. 8-3. For example, in this case Defendant, being found within 25 yards of Ms. Reed, committed an act which "would not otherwise be against the law," *but for* the protective order. This particular wrong resembles an act *malum prohibitum*—or an act which in its nature is not intrinsically wrong, except for "the fact that its commission is expressly forbidden by law." *State v. Taylor*, 297 A.2d 216, 217 (N.J. Dis. Ct. 1972). This is not a crime *malum in se*—or a crime exhibiting an "evil mind," such as an inherently immoral act like rape or murder. *See Santillanes*, 115 N.M. at 222, 849 P.2d at 365; *see also Black's Law Dictionary* 1045 (9th ed. 2009).

**{21}** Unlike a *malum in se* criminal statute in which a person should know of inherently unlawful conduct and anticipate its consequences, a party restrained by a protective order

---

[1]The temporary order of protection standard Form 4-963 NMRA provides under "**ENFORCEMENT OF ORDER**" that "[i]f the respondent violates any part of this order, the respondent may be charged with a crime, arrested, held in contempt of court, fined or jailed."

has to be told that certain otherwise lawful conduct now constitutes a crime; i.e., going within 25 yards of the other party in a public place. Accordingly, the Legislature provided a mandatory notice provision in Section 40-13-6(A), instructing that all orders of protection "shall be personally served upon the restrained party, unless the restrained party or the restrained party's attorney was present at the time the order was issued." Mandatory service of the order of protection provides the restrained party with knowledge that certain actions will be considered criminal, even actions that would not otherwise be considered criminal in other circumstances. Thus notice, and the knowledge that comes with it, would seem to be an integral part of the crime and the legislative intent behind it.

**{22}** In other contexts, we have required a knowledge instruction when statutes are otherwise silent on a particular mental state regarding the identity of the victim. In *State v. Nozie*, 2009-NMSC-018, ¶ 30, 146 N.M. 142, 207 P.3d 1119, we held that knowledge that a victim was a peace officer was an essential element of the crime of aggravated battery on a peace officer. We reasoned that there was no clear legislative intent to omit this mens rea requirement from the statute and that imposing liability on someone who did not know the victim's identity defeated the "'specific deterrent purpose expressed by the statute.'" *Id.* (quoting *State v. Morey*, 427 A.2d 479, 483 (Me. 1981)). We also reasoned that the heightened punishment for battering a peace officer supported the knowledge requirement. *Nozie*, 2009-NMSC-018, ¶ 30; *see also State v. Valino*, 2012-NMCA-105, ¶¶ 15, 17, 287 P.3d 372 (holding that even though statute contained no mental state regarding knowledge of the victim's identity, knowledge that a victim is a health care worker is an essential element of the crime of battery on a health care worker).

**{23}** We can draw certain parallels here. First, as previously discussed, we see no clear legislative intent to omit any mens rea from Section 40-13-6(D) & (F). *See Nozie*, 2009-NMSC-018, ¶ 30. Second, just as knowledge of the victim's identity was an essential element in both *Nozie* and *Valino,* here knowledge that a restrained party's conduct is endangering or affecting a specific person—the protected party—is imperative. The deterrent purpose of the protective order could only be served by knowledge of who is being protected, just like the deterrent purpose of the battery on a peace officer statute. *See id.* Orders of protection are "powerful tool[s] to reduce violence against current or former intimates[,]" and orders of protection "play a critical role as part of a comprehensive plan designed to protect victims from continuing violence in the home." *Benchbook*, *supra*, at pp. 2-1, 2-2.

**{24}** The need for a "knowing" violation is perhaps best illustrated by a common- sense example. The restraining order in this case prohibited Defendant from being in a public place within 25 yards of the protected party. Without knowledge being part of the crime, then a violation could occur, however innocently, at any public place such as a shopping center or an entertainment venue, without one party even being aware of the other's presence. The general intent instruction given in this case requires only an intentional act—e.g., the act of going to a store—even though he may not know that his act is unlawful. Prosecution for that kind of a violation would not serve the deterrent purpose of the Family

7

Violence Protection Act. *See generally* § 40-13-2(D) (defining domestic abuse to include protecting persons from physical harm, severe emotional distress, harassment, etc.).

**{25}**   We acknowledge that the other "knowing" cases cited herein—*Gonzalez*, *Nozzie*, *Valino*—all derive from felonies, and the severity of the crime is one factor our courts have weighed in favor of requiring a knowing violation.  In the case before us, of course, Defendant was convicted of a misdemeanor and sentenced to less than a year in jail.  That said, we conclude that under the particular circumstances of this crime, a "knowing" violation is most consistent with the policy behind the Family Violence Protection Act and the intent of the Legislature.[2]

**{26}**   A knowing violation in this instance required proof that the accused knew of (1) the protective order and (2) Ms. Reed's presence within 25 yards in the same location.  With respect to the first element—knowledge of the restraining order—a restrained party has knowledge of the order when he receives personal service of the order of protection.  *See Maso v. N.M. Taxation & Revenue Dep't*, 2004-NMSC-028, ¶ 13, 136 N.M. 161, 96 P.3d 286 ("[W]here circumstances are such that a reasonably prudent person should make inquiries, that person is charged with knowledge of the facts reasonable inquiry would have revealed.") (internal quotation marks and citation omitted).

**{27}**   At trial, some significance was made about the fact that Defendant did not actually read the details of the order and was therefore unaware of its 25-yard stipulation.  The defense argued that because of this, the State presented no evidence that Defendant actually knew he had to stay 25 yards away from Ms. Reed.  Defendant's position borders on the

---

[2] The dissent claims that half of states nationwide do not impose a knowing requirement.  But the law from various states differs so dramatically, a majority rule is difficult to discern.  For instance, many of the states cited by the dissent impose a willful requirement, which we interpret to be a mental state at least as culpable as knowing.  *See, e.g.*, Wyo. Stat. Ann. § 35-21-105(c) (2008) ("The [protective] order shall contain notice that *willful* violation of any provision of the order constitutes a crime as defined by W.S. 6-4-404, can result in immediate arrest and may result in further punishment."  (emphasis added)); R.I. Gen. Laws Ann. § 12-29-4(a)(3) (2001).  In other states, protective orders are structured in such a specific way that the accused cannot violate them with any less culpable mental state than knowing.  *See, e.g.*, *Gerlack v. Roberts*, 952 P.2d 84, 86-87 (Or. Ct. App. 1998) (holding that defendant's coming within 150 feet of petitioner at a video store did not violate protective order because the video store was not specifically designated in the order).  Our research indicates that at least one state cited by the dissent explicitly requires a knowing violation by statute.  Ind. Code Ann. § 35-46-1-15.1 (as amended through 2010) ("A person who *knowingly* or intentionally violates: (1) a protective order to prevent domestic or family violence . . . commits invasion of privacy, a Class A misdemeanor."  (emphasis added)).  Thus, we conclude that the views expressed in this opinion do reflect those of a number of our sister states that have grappled with similar issues.

frivolous. Defendant's failure to read the contents of the order is no defense. *See Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97, 100, 811 P.2d 1308, 1311 (1991) ("One who intentionally remains ignorant is chargeable in law with knowledge." (internal quotation marks and citations omitted)). Therefore, knowledge of the contents of the order of protection was imputed to Defendant as a matter of law upon proof of service.

**{28}** To be clear, when we state that a party must knowingly violate an order of protection, we do not mean that the party must act with a conscious or wilful desire to defy the protective order. We mean only that in this context the general criminal intent instruction is not enough, because "general intent is only the intention to make the bodily movement which constitutes the act which the crime requires." Wayne R. LaFave, *Substantive Criminal Law* § 5.2(e) (2d ed. 2003), at 355 (internal quotation marks and citation omitted). Additionally, "[k]nowledge and intent are separate, not synonymous, elements." *State v. Hargrove*, 108 N.M. 233, 236, 771 P.2d 166, 169 (1989) (holding that the general criminal intent instruction was not "sufficient to instruct the jury that knowledge of the prohibited blood relationship is an essential element of [the crime of] incest"). We have previously set forth the two elements of knowledge—the protective order and the presence of the protected party within the protected zone—and the State need prove no more than that to sustain a conviction.

**{29}** Our interpretation of Section 40-13-6 (D) and (F) should not deter the State from enforcing orders of protection through criminal sanctions. For example, if a restrained party were to claim he did not knowingly violate an order of protection because he believed he was 30 yards away from the protected party instead of 25, that would be a question for the jury to determine, no different from similar offenses. In most cases, knowing that the prohibited party was within the protected zone of the protected party, at least after a warning, should be sufficient to prove a knowing violation.

**The District Court's Rejection of the Requested Instruction Requires a New Trial.**

**{30}** The evidence in this case supports Defendant's conviction under the instructions that were given. Defendant knew about the protective order based on personal service. For the purpose of determining whether there should be a new trial we evaluate the sufficiency of the evidence under the instructions given. We do not evaluate the sufficiency of evidence for instructions that were not given to the jury. *See State v. Dowling*, 2011-NMSC-016, ¶ 18, 150 N.M. 110, 257 P.3d 930 ("We review Defendant's [sufficiency] claim under the erroneous instruction provided to the jury at trial."). The issue of Defendant's knowing violation will be a question for the jury to consider on remand.

**{31}** Defendant, like any accused, was fairly entitled to a jury instruction that accurately described the essential elements of the crime and what the State would have to prove for a conviction. Any accused is entitled to such an instruction even if he does not ask for it. *See State v. Osborne*, 111 N.M. 654, 662, 808 P.2d 624, 632 (1991) ("[F]ailure to instruct the jury on the essential elements of an offense constitutes fundamental error. Where

fundamental error is involved, it is irrelevant that the defendant was responsible for the error by failing to object to an inadequate instruction[.]"). And here, Defendant unquestionably did ask for the correct instruction.

**{32}** Because Defendant objected to the jury instruction tendered at trial, we review his conviction for reversible error. *Benally*, 2001-NMSC-033, ¶ 12. "A jury instruction which does not instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury is reversible error." *State v. Parish*, 118 N.M. 39, 44, 878 P.2d 988, 993 (1994) (internal quotation marks and citations omitted). To determine if a defect in a jury instruction amounts to reversible error, we must determine whether a reasonable jury could have been confused or misdirected by the jury instruction. *Id.* at 42, 878 P.2d at 991 ("Reversible error arises if . . . a reasonable juror would have been confused or misdirected.").

**{33}** The general intent instruction given in this case could have confused and misdirected the jury notwithstanding the evidence of Defendant's guilt. Under the facts of this case and the instructions given, the jury could have convicted Defendant on either of two theories. First, the jury could have convicted Defendant appropriately based on Defendant's knowledge of the restraining order and knowledge of Ms. Reed's presence. But the jury could also have convicted Defendant based on a lesser showing. The general intent instruction as given allowed the jury to convict for something far less—merely the intentional act of entering and staying at the bar, "even though he may not know that his act is unlawful." We have no way of knowing what was in the jury's mind because the instructions allowed for either. *See Gonzalez*, 2005-NMCA-031, ¶ 23 (holding that the general intent instruction "was not sufficient to instruct the jury that Defendant's knowledge of the cocaine he brought into the Detention Center is an essential element [of the crime] of bringing contraband into a jail"). Accordingly, failure to instruct the jury of a knowing violation constituted reversible error. Under the circumstances we have no choice but to reverse and remand for a new trial.

**{34}** Finally, consistent with this Opinion, we recognize that there should be a uniform jury instruction for this crime. We request that the rules committee develop a uniform jury instruction reflecting that a restrained party must knowingly violate an order of protection.

**CONCLUSION**

**{35}** We reverse Defendant's conviction of one count of violating an order of protection and remand for a new trial.

**{36}** **IT IS SO ORDERED.**

_____
**RICHARD C. BOSSON, Justice**

10

**WE CONCUR:**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
**BARBARA J. VIGIL, Justice**

**PETRA JIMENEZ MAES, Chief Justice**
**(dissenting).**

**MAES, Chief Justice (dissenting).**

**{37}**    In imposing a "knowing" requirement for proof of a violation of a restraining order, the majority holds that the general intent instruction is insufficient because it only requires the intention to make a bodily movement that constitutes the act required by the crime.  The rationale behind the majority's addition of a "knowing" requirement to NMSA 1978, Section 40-13-6(D) (2008) is the fear of the possibility that a person could be charged with violating a restraining order by merely being in the same vicinity as a protected party, without knowledge of their presence.  I respectfully dissent because the general intent instruction given in this case was sufficient to address the concerns of the majority and the definition of the "knowing" requirement set forth by the majority is unclear and appears to be simply one of awareness.  I adopt the jury instructions discussion of the Court of Appeals' Memorandum Opinion.  I offer the following thoughts to supplement my rationale for dissenting.

**{38}**    The new standard is now a "knowing" violation which requires proof that the accused knew of (1) the protective order and (2) the protected party's presence in the same location.  The majority states that this "knowing" requirement should not deter the State from enforcing orders of protection through criminal sanctions and gives the following example: "if a restrained party were to claim he did not knowingly violate an order of protection because he believed he was 30 yards away from the protected party instead of 25, that would be a question for the jury to determine[.]"  This example describes almost exactly what a jury is asked to do using the general intent instruction, which was given in this case.  The general intent instruction given pursuant to UJI 14-141 NMRA stated:

> [T]he state must prove to your satisfaction beyond a reasonable doubt that the defendant acted intentionally when he committed the crime.  A person acts intentionally when he purposely does an act which the law declares to be a crime, even though he may not know that his act is unlawful.  Whether the defendant acted intentionally may be inferred from all of the surrounding

11

circumstances, such as the manner in which he acts, the means used, and his conduct and any statements made by him.

The majority, however, emphasizes the first prong of the general intent instruction, while ignoring the second prong. Although the instruction requires a showing that the defendant made a bodily movement that constituted the act of the crime, such as entering a bar, the second prong of the general intent instruction requires more. A jury must also infer from the surrounding circumstances whether the defendant acted intentionally, meaning that he acted with intent to violate the restraining order. This second sentence accomplishes what the majority attempts to accomplish by adopting a "knowing" requirement.

{39}    The primary concern of protecting a defendant from frivolous prosecution resulting from the act of entering a location, without knowledge of the victim's presence, can be sufficiently addressed by providing the jury with a general intent instruction consistent with UJI 14-141, as the court did in this case. After the jury found that all of the elements of the crime existed, it was able to use the testimony presented in court to determine that Defendant intentionally violated the order by staying in the bar after he became aware of Ms. Reed's presence. In this case, Defendant's statements and actions made it clear that he was apathetic to Ms. Reed's presence and intentionally remained at the bar, in violation of the order, to finish his beer.

{40}    The second prong of the general intent instruction would allow for a jury to come to the opposite conclusion as well. For example, a defendant enters a bar without knowledge of the protected party's presence. While the defendant is drinking a beer, the protected party calls the police to report a violation of the order. Police arrive and arrest the defendant, although the defendant never had knowledge of the protected party's presence. The jury would be able to evaluate all of these facts at trial, and when given the general intent instruction could determine whether the defendant intentionally violated the restraining order, or was merely enjoying a beer. Imposing an unclear "knowing" requirement does not supplement the general intent instruction and may cause trial courts to treat it as a mens rea requirement, forcing the state to delve into a defendant's state of mind. Instead, with the general intent instruction, both parties' interests remain protected.

{41}    Moreover, abstaining from imposing a "knowing" requirement into Section 40-13-6(D) would be consistent with the national trend to protect victims from recurring domestic violence. Over the past twenty years, all fifty states have enacted laws intended to rein in domestic violence. David M. Zlotnick, *Empowering the Battered Woman: The Use of Criminal Contempt Sanctions to Enforce Civil Protection Orders*, 56 Ohio St. L.J. 1153, 1158 (1995). Despite these efforts, police estimate that for each of the more than one million domestic violence crimes reported each year, three more go unreported. *Id.* In all, there are an estimated 1.8 to 4 million incidents of domestic violence each year. Zlotnick, *supra* at 1159.

{42}    Nationwide, half of the states do not impose a "knowing" requirement for a violation

12

of a temporary restraining order.[3]  Logically, this makes sense.  If the state had to prove knowledge on the part of every defendant for every violation, conviction rates would likely plummet and animosity between defendant and victim would increase, as well as the likelihood of another incident.  A recent study involving over 750 women from various jurisdictions nationwide revealed that nearly 60% of women reported violations of protection orders.  TK Logan, PhD & Robert Walker, MSW, LCSW, *Civil Protective Order Effectiveness: Justice or Just a Piece of Paper?*, 25 Violence and Victims 332, 333 (2010).  The potential effect of imposing a "knowing" requirement to prove a violation is, in all likelihood, extremely dangerous considering most of the reported violations occur within the first three months after the issuance of an order.  Christopher T. Benitez, MD, Dale E. McNiel, PhD & Renée L. Binder, MD, *Do Protection Orders Protect?*, 38 J. Am. Acad. Psychiatry L. 376, 382 (2010).  Additionally, psychological abuse nearly quadruples during the period of a temporary restraining order.  *Id.*  In order to protect against re-abuse, our law should not make it more difficult to prosecute violations of protective orders.  Eventually, if it becomes clear that it is difficult to punish a defendant for violating a restraining order because of failure to prove intent, victims will become less likely to report violations, the deterrent effect decreases, and the purpose of obtaining a protective order becomes moot.  Ultimately, this result conflicts with the overall goal of protecting and supporting the public's well-being.

**{43}**     Accordingly, imposing a "knowing" requirement is contrary to the national trend of protecting victims and deterring domestic violence.  It is imperative for future litigants to have a clear understanding of what is required to prove a violation.  The general intent instruction sufficiently protects both parties' interests and therefore I would affirm the Court of Appeals' holding and adopt the jury instructions discussion regarding the imposition of a knowledge requirement in the attached Memorandum Opinion.

_____
**PETRA JIMENEZ MAES, Chief Justice**

---

[3]State statutes regarding protective orders that do not require a knowing violation: Ala. Code § 13A-6-143 (1975); Alaska Stat. Ann. § 18.66.130 (2013); Ariz. Rev. Stat. Ann. § 13-3602 (2013); Conn. Gen. Stat. Ann. § 46b-15 (2013); D.C. Code § 16-1031 (2013); Idaho Code Ann. § 39-6312 (1999); Ind. Code Ann. § 31-15-5-1 (2003); Iowa Code Ann. § 664A.7 (2007); La. Rev. Stat. Ann. §46:2137 (1999); Me. Rev. Stat. tit. 19-A, § 4011 (2011); Md. Code Ann., Fam. Law § 4-508.1 (2011); Mich. Comp. Laws Ann. § 764.15b (2002); Minn. Stat. Ann. § 260C.405 (2008); Mo. Ann. Stat. § 455.085 (2011); N.Y. Fam. Ct. Act § 846-a (2013); N.D. Cent. Code Ann. § 14-07.1-06 (2011); Ohio Rev. Code Ann. § 2919.27(A)(1) (2010); Or. Rev. Stat. Ann. § 107.720(4) (2012); 23 Pa. Cons. Stat. Ann. § 6114 (2006); R.I. Gen. Laws Ann. §12-29-4 (2001); S.C. Code Ann. § 16-25-20 (2008); S.D. Codified Laws § 25-10-13 (2011); VA Code Ann § 16.1-253.2 (2012); Vt. Stat. Ann. tit. 15 § 1108 (2010); Wyo. Stat. Ann. §  35-21-105(c)(2008).

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v. **NO. 29,514**

**AARON A. RAMOS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Karen L. Parsons, District Judge**

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

Defendant appeals his misdemeanor conviction under the Family Violence Protection Act, NMSA 1978, Section 40-13-6(D), (F) (2008), for violating a temporary order of protection that prohibited contact with his ex-girlfriend, Andrea Reed. Defendant contends that the district court's refusal of his requested jury instruction, which included the element that he "knowingly" violated the order of protection, was reversible error. He also argues that if Section 40-13-6(D), (F) does not include "knowingly" as an element, then it is void for vagueness, that the evidence is insufficient to support his conviction; and that imposing a criminal penalty for violation of an *ex parte* order of protection violates due process. We affirm.

**BACKGROUND**

14

The district court issued a temporary order of protection against Defendant on October 31, 2008, upon a petition by Andrea Reed. The order prohibited Defendant from going within one-hundred yards of Ms. Reed's home, school, or workplace. The order further prohibited Defendant from going within twenty-five yards of Ms. Reed in a public place.

On Thursday, November 6, 2008, Defendant went to the Win, Place and Show (WPS) bar in Ruidoso, where Defendant testified he and Ms. Reed had danced "countless" times on Thursday nights. Defendant testified that he was not looking for Ms. Reed or anyone else. Defendant was in the bar having a beer when he saw Ms. Reed walk behind him and approach the bouncer. Defendant was concerned that Ms. Reed would try to cause a scene, so he tried to "shield" himself from any kind of "engagement" with Ms. Reed.

Ms. Reed testified that Defendant and she made eye contact. After Ms. Reed realized that Defendant was not going to leave, Ms. Reed explained to the bouncer that she had an order of protection against Defendant and requested the bouncer's assistance in asking Defendant to leave. The bouncer approached Defendant and explained that Ms. Reed was present and wanted him to leave. Defendant testified that he said to the bouncer, "Why do I have to leave? Why can't she leave?" Defendant told the bouncer that he did not think he should be required to leave since he was just there and was "not messing with anybody." The bouncer then informed Defendant that Ms. Reed was talking about calling the police. Defendant admitted that he told the bouncer, "Fuck her, she can call the cops. . . . I'm finishing my beer." Defendant testified that he finished his beer and then left.

Ms. Reed testified that Defendant did not leave until he realized that she had called the police. After realizing that she was speaking to the police, Defendant announced, "Okay, I'll leave," and then he left. The bouncer testified that Defendant was about twelve to fifteen feet away from Ms. Reed while he was sitting at the bar. The bouncer estimated that ten to fifteen minutes elapsed from the time Defendant arrived to the time he left. He further testified that Defendant left after Ms. Reed walked past Defendant dialing the number to the police department.

Defendant testified that he knew of the order of protection and had been served with the order by a deputy sheriff. The sheriff also explained to Defendant that he was serving him with an order of protection, that he could not call or contact Ms. Reed, and that he was required to stay away from her. However, Defendant was at work and too busy to read the order at the time it was served. Defendant testified that he did not read the order until after the incident occurred. He further testified that he was not aware of the twenty-five-yard restriction at the time of the incident. He said he did not read the order earlier because "it wasn't important to [him] because [he] wanted her out of [his] life, and it was a good thing." He knew that he was required to stay away from Ms. Reed, stating, "It's obvious; it's a protective order." He testified that, in his opinion, "stay away" meant that he was not to take any initiative to contact her, to call her, to write her, or to engage her. Defendant testified that he thought he complied with the order at the time of the incident because he had no

15

intent to contact Ms. Reed and did not approach Ms. Reed at WPS. While Defendant was in jail, he read the order of protection. He testified that the order "specifically says that the twenty-five-yard stipulation is applicable in public places." He further agreed that WPS was a public place.

At trial, Defendant tendered two proposed jury instructions on the elements of violating an order of protection. The first instruction defined criminal intent in conformity with UJI 14-141 NMRA, which required the State to prove beyond a reasonable doubt that Defendant acted intentionally when he committed the crime. Defendant's second proposed instruction included as an element of the offense both that he "knew about the order of protection" and that he "knowingly violated the order of protection." The district court refused Defendant's proposed instruction requiring that the violation of the order of protection have been "knowing." The court did instruct the jury, however, that the State was required to prove beyond a reasonable doubt that Defendant "knew about the temporary order of protection" and that he "acted intentionally when he committed the crime." The jury found Defendant guilty of violating the order of protection, and Defendant now appeals.

## DISCUSSION

### A.    Jury Instructions

Defendant argues that the district court's refusal of his requested jury instruction, which included the element that he "knowingly violated the order of protection," was reversible error. "The propriety of jury instructions given or denied is a mixed question of law and fact[,]" which we review de novo. *State v. Lucero,* 2010-NMSC-011, ¶ 11, 147 N.M. 747, 228 P.3d 1167 (internal quotation marks and citation omitted).

"A jury instruction is proper, and nothing more is required, if it fairly and accurately presents the law." *State v. Laney*, 2003-NMCA-144, ¶ 38, 134 N.M. 648, 81 P.3d 591. "When a uniform jury instruction exists, that instruction must be used without substantive modification." *State v. Caldwell*, 2008-NMCA-049, ¶ 24, 143 N.M. 792, 182 P.3d 775. In the absence of a uniform jury instruction, this Court must examine whether the jury instruction conforms to the language of the governing statute. *See State v. Doe*, 100 N.M. 481, 483, 672 P.2d 654, 656 (1983) ("[I]f the jury instructions substantially follow the language of the statute or use equivalent language, then they are sufficient."). Whether a crime requires a showing of intent is a question of statutory construction. *State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). We begin our review by looking at the words selected by the Legislature and the plain meaning of the language. *See State v. Smile,* 2009-NMCA-064, ¶ 8, 146 N.M. 525, 212 P.3d 413, *cert. quashed,* 2010-NMCERT-006, 148 N.M. 584, 241 P.3d 182. When a statute contains language that is clear and unambiguous, we give effect to it and refrain from further statutory interpretation. *Id.*

Section 40-13-6(D), (F) provides the following in pertinent part:

D.    A peace officer shall arrest without a warrant and take into custody a restrained party whom the peace officer has probable cause to believe has violated an order of protection that is issued pursuant to the Family Violence Protection Act . . . .

. . . .

F.    A restrained party convicted of violating an order of protection granted by a court under the Family Violence Protection Act is guilty of a misdemeanor . . . .

There is no uniform jury instruction for violation of an order of protection. Defendant requested an instruction requiring the State to prove that an order of protection was issued; that it was in effect on November 6, 2008; that Defendant knew about the order; and that Defendant "knowingly violated" the order. The district court reasoned that absent an applicable uniform jury instruction, the elements instruction should conform to the applicable statute. Defendant conceded that the statute did not explicitly require that the conduct be "knowing," but argued that without including "knowingly" as an element, a person could be unfairly convicted for innocent conduct such as passing the person going the other way on a public street or accidently running into the person at a store. The district court determined that the statute does not require proof of a "knowing" violation and therefore refused Defendant's proposed instruction.

Defendant then presented the district court with an alternative instruction, suggesting that if the court would not allow his requested instruction requiring a knowing violation, then the court should give an instruction stating that Defendant "violated the order" along with the instruction on general criminal intent. The court ultimately instructed the jury on the following elements of the offense:

1.    A temporary order of protection was filed in the [d]istrict [c]ourt . . .;
2.    The temporary order of protection was valid on November 6, 2008;
3.    Defendant knew about the temporary order of protection;
4.    [D]efendant violated the temporary order of protection;
5.    This happened in New Mexico on or about the 6th day of November 2008.

In addition, the court instructed the jury that the State was required to prove beyond a reasonable doubt that Defendant acted intentionally when he committed the crime pursuant to UJI 14-141.

We are not persuaded that Section 40-13-6(D), (F) requires that a person knowingly violate an order of protection. The statute does not contain any language stating that the defendant must "knowingly" violate the order. *See* § 40-13-6(D) (providing that "[a] peace officer shall arrest . . . a restrained party whom the peace officer has probable cause to believe has violated an order of protection"); *see also* § 40-13-6(F) (providing that a person

17

"convicted of violating an order of protection . . . is guilty of a misdemeanor"). Furthermore, "[w]e will not read into a statute language which is not there, especially when it makes sense as it is written." *State v. Hubble*, 2009-NMSC-014, ¶ 10, 146 N.M. 70, 206 P.3d 579. The Legislature knows how to include the word "knowingly." *See, e.g.*, NMSA 1978, § 30-3A-3(A) (2009) (stating that "[s]talking consists of knowingly pursuing a pattern of conduct"); *see also State v. Wilson,* 2010-NMCA-018, ¶ 12, 147 N.M. 706, 228 P.3d 490 (holding that use of the term "knowingly" in NMSA 1978, Section 30-31-20(B), (C) (2006), required specific knowledge that the drug trafficking would occur within a drug-free school zone), *cert. denied*, 2010-NMCERT-001, 147 N.M. 673, 227 P.3d 1055. We therefore conclude that the Legislature intended to omit the word "knowingly" in Section 40-13-6(D), (F), and we will not read such an element into the statute. *See State v. Katrina G.,* 2007-NMCA-048, ¶ 17, 141 N.M. 501, 157 P.3d 66 (reasoning that when the Legislature knew how to include something, and did not, we assume the choice was deliberate); *see also Smile,* 2009-NMCA-064, ¶ 8 (stating that when the Legislature's language is clear and unambiguous we will refrain from further interpretation). As a result, we conclude that Section 40-13-6(D), (F) does not require that a violation of a protection order have been "knowing." Instead, the district court properly instructed the jury regarding general criminal intent, absent a specific mens rea requirement in Section 40-13-6(D), (F). *See State v. Gonzalez*, 2005-NMCA-031, ¶¶ 12-13, 137 N.M. 107, 107 P.3d 547 (reasoning that where criminal statute lacks a mens rea requirement, it is construed as requiring general criminal intent absent legislative intent to the contrary).

Furthermore, given Defendant's testimony, he would not be entitled to his requested instruction. Defendant's defense was that he did not know his conduct was wrong based on his own deliberate ignorance and failure to read what the order of protection actually required, combined with his speculative assumptions about what the order prohibited. Defendant admitted that he had not read the order of protection prior to the incident even though it was in his possession and contained a twenty-five-yard restriction for public places. He only decided to actually read the order when he was in jail. Defendant also testified that he was entitled to speculate that he had complied with the order despite his knowledge that it was a protective order and he had not read it.

Ignorance of the law is no defense, and a person who is purposely ignorant may not claim he or she had no knowledge. *See State v. Rivera*, 2009-NMCA-132, ¶ 37, 147 N.M. 406, 223 P.3d 951 (stating that ignorance of the law is no defense); *see also Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97, 100, 811 P.2d 1308, 1311 (1991) (stating that "[o]ne who intentionally remains ignorant is chargeable in law with knowledge" (internal quotation marks and citation omitted)); *accord State v. Sanders*, 96 N.M. 138, 140, 628 P.2d 1134, 1136 (Ct. App. 1981). Consequently, Defendant was not entitled to remain deliberately ignorant of the order's contents and then substitute his own opinion of what was required in order to argue that he did not "knowingly" violate the order of protection.

The weakness of Defendant's position is highlighted by Defendant's admission that after reading the order, he realized that the twenty-five-yard restriction was clearly stated in

the order and that WPS was clearly a public place. Under the present facts, Defendant's proposed instruction regarding an inapplicable defense would have constituted a misstatement of law and injected a false issue. *See State v. Nieto,* 2000-NMSC-031, ¶ 17, 129 N.M. 688, 12 P.3d 442 (stating that a requested instruction that presented an inapplicable defense was properly denied because it was a misstatement of law). Given that Defendant's theory of his lack of a knowing violation was based on his own failure to read the order, the district court properly refused to permit Defendant to parlay his self-imposed ignorance into a defense.

Defendant further contends that if we do not recognize that Section 40-13-6(D), (F) contains knowledge as an element, innocent violations will result in unwarranted criminal punishment. Specifically, Defendant asserts that, without knowledge as an element, a person subject to an order of protection could be unfairly convicted for passing someone in a car going the other way on a busy public street, or for accidentally running into someone at a store. These abstract situations are distinguishable from the facts in this case, where Defendant intentionally chose to remain ignorant of the order's requirements and refused to leave WPS even after he was informed that Ms. Reed wanted him to leave pursuant to the order of protection. A defendant is not entitled to an instruction that is not supported by the evidence. *See State v. Nozie*, 2007-NMCA-131, ¶ 6, 142 N.M. 626, 168 P.3d 756 (reasoning that a defendant is only entitled to jury instructions that are supported by sufficient evidence). As a result, we decline to consider whether an instruction that a defendant did not violate an order could conceivably be warranted in some other factual scenario.

Finally, Defendant argues that not requiring that a violation of a protection order be knowing invites absurd results, such as requiring Defendant to immediately exit WPS upon becoming aware of Ms. Reed's presence, leaving his beer unfinished. However, Defendant fails to persuade us that leaving a beer unfinished in order to comply with an order of protection is an absurd result, and we decline to address his argument further.

As a result, we affirm the district court's denial of Defendant's requested instruction requiring that Defendant must have knowingly violated the order of protection.

## B.    Void for Vagueness

Defendant argues that if Section 40-13-6(D), (F) does not include "knowingly" as an element, then it is unconstitutionally void for vagueness. Specifically, Defendant contends that absent a requirement that a violation be committed "knowingly," the statute does not give fair notice of what constitutes a violation. We consider this argument although it was not raised below. *See State v. Laguna*, 1999-NMCA-152, ¶ 23, 128 N.M. 345, 992 P.2d 896 (reviewing a defendant's argument that a statute was void for vagueness despite the lack of preservation). "We review a vagueness challenge de novo in light of the facts of the case and the conduct which is prohibited by the statute." *Smile*, 2009-NMCA-064, ¶ 17 (internal quotation marks and citation omitted).

A statute is void for vagueness if it fails to give persons of ordinary intelligence a fair opportunity to determine whether their conduct is prohibited, or if it fails to provide minimum guidelines for the reasonable judge, jury, prosecutor, or police officer to enforce the statute without subjective and ad hoc application. *State v. Jacquez*, 2009-NMCA-124, ¶ 6, 147 N.M. 313, 222 P.3d 685. Statutes are presumed to be constitutional, and Defendant bears the burden of establishing that the statute is unconstitutional. *Smile*, 2009-NMCA-064, ¶ 17. Furthermore, if the statute clearly applies to Defendant's conduct, then there is no constitutional problem. *See Laguna*, 1999-NMCA-152, ¶ 24.

Defendant has failed to demonstrate that Section 40-13-6(D), (F) is unconstitutionally vague on either ground. First, Defendant fails to demonstrate that the statute did not give him a fair opportunity to determine whether his conduct was prohibited. *See Jacquez*, 2009-NMCA-124, ¶ 6. According to Defendant's own testimony, the only reason that he was not aware of the twenty-five-yard restriction was that he did not read the order of protection. After reading the order while he was in jail, however, Defendant testified that the twenty-five-yard restriction was clearly stated in the order and that WPS was a public place. Defendant further testified that even before reading the order, it was "obvious" that a protective order required him to stay away from Ms. Reed. As a result, by Defendant's own admission, the statute gave him a fair opportunity to determine that his conduct was prohibited.

Second, the statute is not so lacking in standards that its enforcement would be subjective and ad hoc. *See Jacquez*, 2009-NMCA-124, ¶ 6. The fact that a statute is written in general terms and that it then must be applied on a case-by-case basis does not establish that it is unconstitutionally vague. *See State v. Fleming*, 2006-NMCA-149, ¶ 5, 140 N.M. 797, 149 P.3d 113 (stating that mere room in a statute for the exercise of charging discretion does not establish that a statute is void for vagueness); *State v. Larson*, 94 N.M. 795, 796, 617 P.2d 1310, 1311 (1980) (stating that a statute is not unconstitutionally vague just because some marginal cases could be hypothesized in which doubts might arise). Furthermore, Defendant's conduct in refusing to leave WPS after he was informed that Ms. Reed wanted him to leave pursuant to the order of protection constituted a clear violation of the statute. As a result, we conclude that Defendant has failed to demonstrate that Section 40-13-6(D), (F) is unconstitutionally vague. *See Laguna*, 1999-NMCA-152, ¶ 24 (reasoning that if a statute clearly applies to a person's conduct, then it is not unconstitutionally vague).

## C.    Sufficiency of the Evidence

Defendant argues that the evidence is insufficient to support his conviction because the violation was not intentional. Specifically, he contends that he left WPS "soon after" he became aware that Ms. Reed was present and that he did not attempt to approach Ms. Reed or contact her in any way.

In reviewing the sufficiency of the evidence, we analyze "whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable

doubt with respect to every element essential for conviction." *State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86. "We determine whether a rational factfinder could have found that each element of the crime was established beyond a reasonable doubt." *Id.* Furthermore, "we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

Defendant does not dispute that a temporary order of protection was filed; that the order was valid on November 6, 2008; that he knew about the order of protection and initially refused to leave WPS even after being informed that Ms. Reed wanted him to leave pursuant to the order; that he violated the order by going within twenty-five yards of Ms. Reed in a public place; and that the alleged incident happened in New Mexico on or about November 6, 2008. As a result, there was sufficient evidence for the jury to find that Defendant intentionally violated the protection order.

To the extent that Defendant argues that his testimony supported his belief that he was in compliance with the order, the jury was free to reject his version of the incident. *See State v. Trujillo*, 2002-NMSC-005, ¶ 31, 131 N.M. 709, 42 P.3d 814 (reasoning that a factfinder may reject the defendant's version of an incident); *see also State v. Neal*, 2008-NMCA-008, ¶ 19, 143 N.M. 341, 176 P.3d 330 ("The test is not whether substantial evidence would support an acquittal, but whether substantial evidence supports the verdict actually rendered."). We hold that sufficient evidence supported the jury's finding that Defendant intentionally violated the order of protection.

## D.    Due Process

Defendant argues that punishing him criminally based on an *ex parte* order of protection violates due process. Defendant does not state how he preserved this issue below, or why this issue need not be preserved, and therefore we decline to address it. *See State v. Dombos*, 2008-NMCA-035, ¶ 21, 143 N.M. 668, 180 P.3d 675 (declining to address the defendant's due process arguments on appeal where the defendant did not preserve them); *see also State v. Torres*, 2005-NMCA-070, ¶ 34, 137 N.M. 607, 113 P.3d 877 (stating that this Court will not address issues unsupported by argument and authority). As a result, we conclude that Defendant failed to preserve his due process claim.

## CONCLUSION

For the foregoing reasons, we affirm Defendant's conviction and sentence.

**IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

21

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**CYNTHIA A. FRY, Judge**